UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT FISH )<br><br>      Plaintiff, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, *et al.* )<br><br>      Defendants. )<br>_____ ) | Civil Action No.  06-1281 (PLF/JF) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
OR FOR SUMMARY JUDGMENT
<u>AND RELATED RULE 56(f) MOTION</u>**

    This case presents a shocking situation: the Federal Bureau of Investigation and its agent John Louryk, including by and through their attorneys at the U.S. Attorneys Office, have engaged in a concerted multi-year effort to deliberately conceal the fact that the violent assailant of Robert Fish, now known to be John Louryk, was acting as an agent of the Federal Bureau of Investigation when he, wearing plain clothes and displaying no law enforcement insignia, beat Robert Fish in the head with a metal baton until he was bloodied and taken to the hospital.

    The beating took place on April 17, 2000. For five years, despite diligent efforts from plaintiff and in violation of its binding legal obligations in discovery, the U.S. government willfully withheld and concealed information that provided the identity of the assailant and that he was an agent of the FBI assigned to its Joint Terrorism Task Force.

    Information that the assailant was a full-time FBI Joint Terrorism Task Force agent was possessed only by the agent and the Government, which it concealed despite diligent efforts by Fish.

The concealment of the Government cause of Fish's injury began at the moment of injury, by Louryk's concealment that he was a law enforcement agent when he engaged in overt law enforcement activity, albeit unlawful, culminating in his attack on Fish. He acted in plain clothes. He failed to identify himself as FBI in any overt manner. He refused to respond when Fish repeatedly cried out, "Are you a police officer?" The assailant then transferred Fish by dragging him to a uniformed DC Metropolitan Police Department officer.

Fish has proceeded in related litigation solely against the District of Columbia[1] *without* knowledge that an FBI agent was an independent, and Governmental, cause of his injury. See Alliance for Global Justice et a. v. District of Columbia et al., Civil Action 01-0811 (PLF / JMF).

In the course of that litigation, the FBI has repeatedly asserted, under oath and subject to perjury, that none of its agents or personnel used force against protestors, either in connection with the April 2000 IMF/WB protests generally, or with respect to Fish specifically.

Fish propounded discovery requests to the FBI in the Alliance case demanding that the FBI search its collective knowledge and produce information and documents related to the assault by

---

[1] There have been no FTCA claims advanced by the Alliance plaintiffs or by Robert Fish against the Federal Defendants. There is no such claim for relief in the prayer for relief. That the Alliance complaint does not encompass claims against the Federal Government has been stated and represented repeatedly before the Court, including in response to the Federal Defendants' repeated attempts to dismiss with prejudice any future potential FTCA claims. See Opposition to Federal Defendants' Motion for Summary Judgment (Alliance docket entry 218, filed 3/10/2006) at 31 – 33 (no FTCA claims advanced in Alliance; argues against "dismissal" of potential FTCA claims where Fish had submitted his then-pending November 4, 2005 FTCA claim to the FBI); Pls' Opp to Fed Def's Dispositive Motion and Motion for More Definite Statement, and Pls' Motion Under Rule 56(f) (Alliance docket entry 37, filed January 30, 2002) at 9 ("That motion should be denied for the simple reason that the complaint does not seek damages from these individuals [under the FTCA].")

At the time of these federal motions, including as early as January 30, 2002, it was completely inexplicable why the Federal Government would repeatedly petition the Court for the dismissal of all potential FTCA claims against it by Alliance plaintiffs, including Fish, *when none had ever been advanced in that litigation*. In retrospect, this appears to reflect the Federal Defendants' knowledge at the time that Fish's assailant was an agent of the FBI, although such information remained concealed from and unknown to Robert Fish until August 1, 2005, as discussed herein.

2

a plain clothed officer against Robert Fish. The FBI represented that it had conducted a comprehensive search.

The FBI appointed Supervisory Special Agent James Rice, III as its agency spokesperson. Rice signed the FBI's discovery productions and was the FBI's appointed representative pursuant to Rule 30(b)(6) for all issues.

Through spokesperson Rice, the FBI repeatedly swore that no FBI agents or personnel engaged in *any* use of force against IMF/WB protestors, including Robert Fish. See Ex. 7 of Defs' Mot. Dismiss., Declaration of James Rice III on behalf of the Federal Bureau of Investigation, dated December 11, 2001 ("FBI personnel did not engage in any physical confrontation with the protestors. . . I am not aware of any instances where FBI personnel were involved in the unlawful conduct alleged by plaintiffs."); Id. at ¶7 (Rice attests that FBI personnel did not participate or engage in crowd control); Id. at ¶9 (Rice attests that the FBI did not intervene against protestors, but simply reported large protestor movements to the Command Post); Memorandum of Points and Authorities in Support of Federal Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment, as to Certain Claims, as to Certain Federal Agencies and Defendant's Motion for a More Definite Statement at 9 ("[T]he FBI . . . had no agents directly involved in the events at issue in [Alliance]"); Ex. 7, Federal Bureau of Investigation's Answers to Plaintiffs' Interrogatories at 7 – 8; Id. at 17 (Rice attests "The FBI is unaware of any of its personnel using any force against demonstrators."); See also Federal Defendants' Motion to Dismiss, filed December 11, 2001 (docket entry 28) at 9 ("the FBI had, at most, very indirect roles in [any of] the incidents referenced in Plaintiffs' Complaint").

Robert Fish had no reason to know that Rice's sworn statements and the representations from their U.S. Attorney's Office counsel as officers of the court were inaccurate or false or that the FBI or James Rice had failed to search its collective knowledge in forming its response. The FBI, in its motion, points to the fact that Fish did not send to the FBI a particular interrogatory about the assailant that was sent to the District of Columbia as "evidence" of a lack of diligence. On the contrary, that reflects the fact that there *was no reason to believe that the individual was an FBI agent* or personnel, especially in light of the repeated declarations from Rice and counsel that their agents had nothing to do with the incident and also in consideration of the fact that the assailant was clearly working as or with the D.C. Metropolitan Police Department (given both his apparent action with uniformed MPD at the scene of the assault and the fact that he is observed on video two days prior to the assault entering the Convergence Center *with the MPD Intelligence Unit* when it illegally raided the Center).

Yet, after years of denials of the involvement, indeed even the possibility of involvement, of FBI personnel, on August 1, 2005 - - less than two days before the deposition of Mr. Rice - - the FBI suddenly delivered newly "discovered" documents consisting of federal deputation documents for an individual by the name of John B. Louryk (who has now been established to be Fish's assailant based on photo and other evidence[1]).

This was a completely unexpected disclosure. It was not provided as obligated in response to the timely propounding in Alliance of plaintiffs' January 19, 2002 First Set of Requests for

---

[1] MPD Captain Jeffrey Herrold, presented with still images, confirmed that the individual identified by James Rice as Louryk is also the individual depicted on video beating Robert Fish. See Ex. 3, Rule 30(b)(6) Dep. of District of Columbia (Herold) at 5 – 8. According to Herold, while he did not know Louryk's name, he recognized him from his deployment on other law enforcement assignments. Id.

Production to the Federal Government which encompassed all documents related to the Fish assault. It was not produced as obligated in response to plaintiffs' Second Set of Requests for Production which also encompassed all documents related to the Fish incident specifically.

The disclosure was prompted solely and forced by the fact that James Rice was about to be deposed under oath.

It is not the case that "discovery" of the involvement of Louryk was not at hand or not reasonably accessible to James Rice, III, who completed the FBI's discovery responses and who was the FBI's Rule 30(b)(6) spokesperson on all issues.

At his August 3, 2005 deposition *James Rice admitted that he was the direct supervisor of John Louryk in connection with the IMF/WB protests on April 17, 2000*. Rice identified Louryk in stills from a videotape associated with the then-unidentified assailant that had been previously produced to the FBI in discovery. Rice testified that he was the direct supervisor of John Louryk for the day and during the events at issue. Rice admitted that it was he who personally gave Louryk his assignments and directives in connection with the IMF/WB protests on April 17, 2000. See Ex. 4, Rice Dep. at 71:12-72:2.

The deputation documents reflect that Louryk was assigned full-time to the FBI's Joint Terrorism Task Force.

When asked why he was producing these documents at that time in August 2005, Rice answered that it was because plaintiffs had requested the documents. True, but that was in January, 2002.

Rice could not explain why federal deputation documents for this one individual was suddenly deemed of any relevance to be produced to plaintiffs on August 1, 2005 by the U.S. Attorney's Office. Id. at 29:1 – 31:14. Rice testified that Louryk's deputation documents had been provided to him the day before his deposition, on August 2, 2005, by Assistant United States Attorney Peter Smith. Id. at 28:20 – 29:5.  This was the only individual for whom a deputation document had been produced. Id. at 30:9 – 16.

According to Rice, the U.S. Attorney's Office at that time advised him that Louryk was a party to a lawsuit for alleged actions in connection with the April 2000 IMF/WB protests. Id. at 31:10 – 14.

If the Department of Justice defendant and/or its counsel knew that it possessed federal deputation documents establishing the identity of the assailant, those documents should have been produced years before.  There has never been any explanation provided for the willful withholding and concealment of these documents.

The deputation documents executed in July, 1999, of course, do not establish a connection between Louryk and the assault on Fish. They show that Louryk was working as an FBI agent with the JTTF. The documents had to be presented to Rice based on other information possessed by the defendants or defense counsel establishing a known linkage to the Fish assault. This itself evidences that the Department of Justice or the FBI or their counsel have withheld and concealed information establishing or reflecting the identity of Fish's assailant despite obligations arising under the Federal Rules of Civil Procedure for disclosure in response to discovery requests.

According to Rice, the documents were being produced because they had been requested by Fish's counsel, apparently a reference to the requests for production timely propounded in the Alliance litigation. Id. at 30 – 31. At all times the FBI maintained that there was no responsive material relating to the assault against Fish within its possession, custody or control or reasonably accessible by the FBI.

These document demands were diligently and timely served as soon as possible within the Alliance litigation. The FBI produced its initial disclosures on December 26, 2001. The document demands were made on January 19, 2002. Responses were due, and the initial response was received, on February 22, 2002. All of these dates fall within the two year FTCA limitations period. See, Garza v. U.S. Bureau of Prisons, 284 F.3d 930 (8th Cir. 2002) (In FTCA case, "[W]here plaintiff has timely requested records that contain the specific facts. . . that caused the injury, and those facts are not otherwise knowable, the cause of action does not accrue until he receives the records."); Waits v. United States, 611 F.2d 550, 553 (5th Cir. 1980) (same). Subsequent discovery requests were even more exacting and less categorical and specifically referred to all documents related to the Fish assault. None produced any responsive information.

Even at the FBI / Rice deposition in Alliance in August 2005, the FBI continued to willfully withhold information within its possession and/or reasonable access that related to Louryk and the attack on Fish.

The FBI refused to produce the telephone number for Louryk, even though James Rice admitted that he had "easy access" to that information. Id. at 70:14 – 71:3.

The FBI refused to produce address or any contact information for Louryk, even though Rice admitted that such information was "easily accessible," id. at 72:21 – 73:18, that the JTTF had the very month prior sent Louryk a card upon his mother's passing and that current JTTF agents possessed his address, id. at 51:1 – 52:14.

Rice testified, incredibly, that he and the FBI's attorneys has spoken by telephone conference call with Louryk the day prior to Rice's deposition, but that he (Rice) had "no idea" about Louryk's use of force against Fish because Rice did not ask about it, and the subject would be discussed only through counsel. Id. at 73:20 – 22 (Rice has "no idea" about Louryk's use of force); Id. at 50:9 – 13 (call was strictly between AUSA Smith and Louryk about setting up a time to meet or call back). Whether through counsel or through Rice or through other means, the FBI knew that Louryk was the alleged assailant. Isolating information within counsel does not place that knowledge beyond the FBI's knowledge or access.

### A.     The Instant Complaint is Timely

Fish's complaint should be held to accrue upon discovery that his assailant was an agent of the FBI. See, Skwira v. U.S., 344 F.3d 64, 77 - 78 (1st Cir. 2003) ("the proper subject of knowledge for accrual purposes under the FTCA is (1) the fact of injury and (2) the injury's causal connection *with the government*") (emphasis added)[1]; Garza v. U.S. Bureau of Prisons, 284 F.3d 930, 934 (8th Cir. 2002) (requires reason to believe claimant has been injured by act or omission *of the government*); Diaz v. United States, 165 F.3d 1337, 1340 (11th Cir. 1999)

---

[1] The Skwira Court observes that stricter standards regarding discovery of federal involvement exists, for particular reasons, within the medical malpractice arena but those standards are more liberally applied outside of that specific context. See Skwira 344 F.2d at 76 – 77.

(accrual of wrongful death FTCA claim occurs "when the plaintiff knows, or exercising reasonable diligence should know, both of the decedent's death and its *causal connection with the government.*"); Drazan v. United States, 762 F.2d 56, 60 (7th Cir. 1985) (plaintiff may be afforded benefit of diligent discovery accrual standard where she lacked reason to believe she had been injured by an act or omission of the government). This diligent discovery accrual standard does not require proof of deliberate concealment to be applicable.

Additionally and independently, equitable tolling should apply because there was deliberate concealment. "Read into every federal statute of limitations . . . is the equitable doctrine that in case of defendant's fraud or *deliberate concealment of material facts* relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." Fitzgerald v. Seamans, 553 F.2d 220, 228 (D.C. Cir. 1977) (emphasis added); See also Barrett v. United States, 689 F.2d 324 (2nd Cir. 1982) (applying Fitzgerald v. Seamans to allow FTCA claim alleged to have accrued over two decades after the actual injury).

The FBI, by the instant motion, asks the Court find that *as a matter of law* on the facts thus far presented that there was no deliberate concealment of material facts related to the assault against Fish or, alternately, that Robert Fish *as a matter of law* failed to be diligent in uncovering that his assailant was assigned full time to the FBI. See, e.g., Barrett v. United States, 689 F.2d 324, 330 (2nd Cir. 1982) (denying Federal Government's motion for summary judgment where FTCA claim was filed two decades after injury where "factual disputes as to the extent of the Government's concealment and the diligence exercised by [plaintiff] in the 1950s preclude us

9

from disposing of this matter without a trial on these issues. We cannot conclude that as a matter of law the FTCA claim accrued prior to 1975.")

Under these facts, however, Fish's claim against the United States did not accrue, and the statute of limitations did not begin to run, until August 1, 2005 at the earliest. Fish's FTCA claim was filed promptly after that date, allowing a few weeks for additional follow up investigation, and well within the two year limitations period for FTCA claims.

The United States cannot persuasively contend that Robert Fish knew of the federal cause of his injury at the time of occurrence, or any time prior to August 1, 2005.  He had no claim accrual or obligation to file a complaint against the Federal Government prior to that date.

Fish knew of MPD involvement in the chain of events, but not of federal involvement. See Hobson v. Wilson, 737 F.2d 1, 36 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985) ("plaintiff's knowledge of the grounds for a suit must generally extend to an awareness of the persons responsible for plaintiff's injury. . . [S]imply because a person knows he has been injured by one person cannot reasonably mean he should be held to know of every other participant.").

Fish proceeded with due diligence and investigation into the cause of his injury, which in the ordinary course of the Alliance litigation enabled him to probe whether or not the Federal Government was involved. Were it not for the deliberate concealment by the Federal Government of its involvement, Fish would have long ago been able to perfect his claims against the United States.  Consequently, he is entitled to the diligence-discovery accrual standard in determining the date of the accrual of his FTCA claim or to equitable tolling of the limitations period.

## B.     Diligence by Robert Fish

Diligence and persistence are, of all characteristics, most present in Robert Fish's five year long campaign to discover the identity of his assailant and his law enforcement affiliation.

The attack happened on April 17, 2000.  As he was being beaten bloody, Fish cried out for help from police. An MPD uniformed officer responded and told Fish, "It's okay, he's a police officer." Fish then lost consciousness briefly as the beating continued.  See Ex. 5, Fish Dep. at 103 – 109. There was a substantial presence of DC MPD officers in the immediate vicinity, including Chief Charles Ramsey and Assistant Executive Chief Terrence Gainer. Id. at 108:3 – 110:22.

Shortly thereafter Fish recovered a photo he had taken of his assailant's face during the beating. The assailant's arm is raised with a baton about to deliver a blow to Fish's head. The photo had been recovered from Fish's camera. The assault originally began when the assailant observed Fish taking photos of MPD police misconduct. The assailant grabbed the camera and attempted to stomp on it, but it was recovered by a bystander and the photo taken by Fish of his assailant was consequently available to Fish.

By April 18, 2000 Fish had begun posting this photo to list serves [large e-mail lists] and on sites frequented by activists and law enforcement (including the FBI and its JTTF) seeking "open source information" on the Internet, such as Indymedia.org, which allows open posting of stories, photos, and requests. In all such instances, Fish provided a copy of the assailant's photo and asked that if any one could identity that officer to please contact him. Id. at125:7 – 129:5; Ex. 1, Fish Affidavit at ¶3.

11

In May, 2000, Fish initiated contact with James Smart from the D.C. MPD Office of Professional Conduct and asked if OPR could identify the assailant. Smart was provided a photograph of the assailant, and provided no identification in response. See Ex. 1, Fish Affidavit at ¶3.

At the same time, Fish initiated contact with Captain Jeffrey Herrold, MPD's Civil Disturbance Unit Coordinator to determine if Herrold could assist with the identification. Id. Herrold was provided a photograph of the assailant, and provided no identification in response.

On September 1, 2000, Fish through counsel filed a Freedom of Information Act request to the MPD requesting identification of the assailant based on his photograph. On October 11, 2000, in the absence of any response, Fish through counsel filed an appeal with the Office of the Mayor. No response to that was received. See Ex. 8, Affidavit of Carl Messineo, Esq. at ¶2.

Throughout the Alliance litigation, Fish has propounded to the Federal defendants discovery requests that would reveal the identity of federal actors as well as if a federal agent used force against Fish. See Ex. 6a, Plaintiffs' First Request for Production of Documents, to Directors of the Federal Bureau of Investigation and Federal Emergency Management Agency, and Administrator of the Drug Enforcement Administration at 3, 8 (all documents related to assignment by Federal Government of any person to provide security or perform law enforcement function related to the IMF/World Bank protests, or government response to such protests; all documents relating to Government's operations related to its response to the protests or protest-related activities); Ex. 6b, Plaintiffs' Requests for Production to Each Defendant Pursuant to the Court's December 31, 2003 Order at 5 - 6, 9(all documents related to Government's operations

related to protest activity, including but not limited to the April 17, 2000 use of force against Robert Fish; all documents related to use of force, including against Fish; records related to persons who had any responsibilities related to use of force against Fish); Ex. 6c, Plaintiffs Interrogatories to Each Defendant Pursuant to the Court's December 31, 2003 Order at 7 - 10, 12 (identify law enforcement who were deputized or otherwise granted law enforcement authority in connection with the April, 2000 protests; describe all uses of force; identify all persons with responsibilities for the April, 2000 protests, including those for activity at or near 18th & K Streets on April 17, 2000, the site of Fish assault; identify all law enforcement agents outside the FBI with responsibilities related to the protests; identify all plain clothed police officers or law enforcement agents who engaged in use of force in connection with protests).

On or about June 10, 2003, information was received from the District of Columbia, on information and belief, that the assailant was "Bruce Lorrick" a (former) detective with the non-federal Metro Transit Police.

A public records search was undertaken for "Bruce Lorrick," and a licensed private investigator was employed to locate "Lorrick." See Ex. 8, Affidavit of Carl Messineo, Esq. at ¶3. These efforts produced information that "Lorrick" had, after retirement, left the area. Public records searches were conducted in the areas believed to be his new residence, and telephone calls were placed to persons identified in that area with the last name "Lorrick."

There was at this time no reason to believe "Lorrick" had any connection with the federal government.

Unsuccessful efforts to locate Lorrick continued. In June, 2005, Fish served a subpoena duces tecum on WMATA. Curiously, the *federal* defendants objected to the subpoena and return of documents. The significance of the fact that it was the federal defendants which objected and sought to stop this inquiry was not then apparent.

On August 1, 2005, the U.S. Department of Justice, United States Attorney's Office produced a copy of Special Deputation documents for an individual by the name of John Bruce Louryk. The federal Government also produced a Memorandum of Understanding executed in mid-1999 whereby Louryk was assigned full-time to the Joint Terrorism Task Force. The MOU provides at Section XIV that the FBI may be liable for federal deputies assigned to the JTTF "for acts committed while in the scope of the employment with the JTTF" pursuant to the Federal Tort Claims Act. See Ex. 2 (Special Deputation documents and MOU).

In the subsequent ninety days, Fish again conducted a public records search, determined Louryk to have a residence in Maryland, and engaged a process server who made multiple unsuccessful attempts at personal service of process upon Louryk.

On November 4, 2005, Fish filed FTCA claims with the federal government identifying Louryk as Fish's assailant and providing detailed supporting records.

The federal Government did not even bother to acknowledge the claim and never responded.

After the expiration of the requisite six month waiting period, on July 20, 2006, Fish filed the instant complaint.

At all times, and over a period of years, Fish has been diligent in efforts to identify and locate

his assailant.

    **C.    Fish's Complaint is Not Precluded By an Earlier FTCA Application Which Was Rejected As Unprocessed Specifically Because The 700+ Filers Had No Information Establishing the Identities and Federal Affiliations of Any Perpetrators**

On or about April 12, 2002, former (now dismissed) co-counsel for the <u>Alliance</u> plaintiffs attempted to file an FTCA claim with the Government on behalf of the over 700 plaintiffs and putative class members who were bringing suit in that case. The FTCA presentment was comprised simply of a copy of the complaint in <u>Alliance</u>. It was not presented by Robert Fish based on the possession of specific knowledge of federal involvement, it was a broad presentment - - which the federal Government explicitly refused to process - - and afforded the federal Government the opportunity to review the claims of all 700+ plaintiffs and putative class members and to step forward were its personnel involved and engage in early efforts to settle or resolve claims. It did not identify specific federal involvement because such specifics were not within the knowledge of the filers.

    Because the plaintiffs at that time could not identify the specific federal involvement in the violations which they suffered, the federal Government responded that it was "unable to process" any such claims asserted under the FTCA. <u>See</u> Ex. 2 of Defs.' Mot. Dismiss at 3.

    The Government observed that "The FTCA presentment and its attachments, however, provide absolutely no information that any Federal agency or Federal employee acted improperly or that any actions they may have taken caused any personal injury or property loss or damage to any named claimants. Indeed, . . . the FTCA presentment provides <u>no</u> such information. . . " <u>Id.</u> at 2.

The point of the FTCA notice was to provide notice of violations and to afford agencies the opportunity to accept responsibility for claims for which each may be responsible, and to move the claims towards early settlement without the resource consumption associated for all parties with all-out litigation. The agencies did not respond in any affirmative manner and, in fact, rejected all claims as unprocessed specifically because plaintiffs lacked information about Federal Government causation.

Now comes the Government - - after years of concealing and withholding information about its agent's perpetration of the attack on Robert Fish - - and actually points to that initial effort at presentment as "proof" that Robert Fish knew of federal Government involvement in his injury. In fact, the FTCA claim evidences exactly the opposite, that he had no information about federal Government causation or else the information would have been included in the attempted 2001 *unprocessed* FTCA claim. It is a mind twisting exercise for the federal Government to now claim that Robert Fish's lack of knowledge in 2001 as to the federal identity of his assailant "evidences" his knowledge in 2001 as to the federal identity of his assailant.

The existence of a prior and unprocessed FTCA presentment, *made without knowledge that Fish's assailant was acting as an agent of the FBI*, does not in any way preclude the presentment of a FTCA claim, filed when Fish's claims did in fact accrue against the federal Government, which occurred only on or about August 1, 2005 upon disclosure that Louryk was acting in within his assignment to the FBI JTTF.

The relevant statute provides that:

> "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues <u>or</u> unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

28 U.S.C. §2401(b) (emphasis added).

The presentment of the instant complaint falls squarely within the allowances of the FTCA statute because the instant complaint is filed within two years of the accrual of the claim (on November 4, 2005).

### D. Fish's Complaint is Not Barred By *Res Judicata* Where his Federal Claims Did Not Accrue Until Years After the Filing of the <u>Alliance</u> Case

There is no issue preclusion of Fish's claims. No issues involving the participation or responsibility of the United States for the assault against Fish have been decided in the <u>Alliance</u> case. The Federal Defendants, strangely, point to a ruling that dismissed claims seeking equitable relief for the April 15, 2000 closing of the Convergence Center as foreclosing Fish's claims for the April 17, 2000 beating. Equally as misplaced, the Federal Government also points to the Court's ruling in <u>Alliance</u> deferring as to whether expungement of arrest records is appropriate relief for those falsely arrested. That has nothing to do with Fish. He was not arrested. In neither of these referenced rulings did the Court "decide an issue of fact or law" related to Fish's claims against the Federal Government for the April 17, 2000 beating by Louryk.

There is no claim preclusion of Fish's federal claims. Fish did not advance claims against the Federal Government in the <u>Alliance</u> case[1] because none could be advanced. None had accrued.

---

[1] <u>See</u> <u>supra</u> n.1.

None were known. None were ripe. There is no failure to advance claims where those claims did not, at the time of the Alliance complaint, exist.

Had the government and its attorneys at the U.S. Department of Justice not willfully withheld critical evidence they were obligated to produce; had they not acted to conceal the FBI's involvement in and responsibility for the beating of Robert Fish, the Fish claim against the FBI would have been filed sooner. It is outrageous that having engaged in this improper conduct they would now move this Court to bar his claim, which has only accrued based on their disclosure, and which is now properly filed.

**Conclusion**

The Federal Government has failed to establish as a matter of law that Fish's claim accrued prior to August 1, 2005 or that there is any basis for dismissal of Fish's claims at this very early stage.

## MOTION PURSUANT TO RULE 56(f)

While Robert Fish provides the Court with a substantial basis for his allegations of willful concealment, there remains substantial discovery that is anticipated would provide even additional detail. Robert Fish, at this time, is not in possession of such additional discoverable information because there has been no discovery in this matter. See Ex. 1, Affidavit of Fish at 4.

Such discovery would include written discovery and depositions, including of John Louryk, the United States and other involved individuals focused on the knowledge by the U.S. or its agents and counsel about the fact that their FBI agent was the alleged perpetrator of the assault

against Fish, and related inquiry regarding the deliberate concealment of this information. Additional discovery would be focused on exploring and defeating the Government's claim, if presented, that Fish failed to engage in diligent efforts to determine the identity and law enforcement affiliation of his assailant. John Louryk is believed to be a current employee or contractor with the Department of Homeland Security, and consequently the United States possesses knowledge of his whereabouts. Limited discovery would be needed to determine his whereabouts in order to effect personal service for his deposition.

                                                  Respectfully submitted,

February 20, 2007                        _/s/_____
                                            Carl Messineo (#450033)
                                            Mara Verheyden-Hilliard (#450031)
                                            PARTNERSHIP FOR CIVIL JUSTICE
                                            10 G Street, NE Suite 650
                                            Washington, DC 20002
                                            (202) 789-4330
                                            (202) 789-4333 facsimile