

U.S. Department of Justice
United States Attorney
District of Columbia

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20001*

# FAX

| | | | |
|---|---|---|---|
| To: | Carl Messineo<br>Mara Verheyden-Hilliard<br>Merrilyn Onisko | From: | Peter Smith |
| | cc. Tom Koger/Lori Parris | | |
| Fax: | (202) 530-5634<br>(202) 727-0431 | Phone: | 307-0372 |
| Date: | August 1, 2005 | | |
| Re: | <u>Alliance v. DC et al.</u>, No. 01-0811 (PLF/JMF) | | |
| Page(s): | 13 including cover | | |

COMMENTS:

Counsel:

Please see the attached letter with enclosures.

Best,

**U.S. ATTORNEY FACSIMILE COMMUNICATION**

**U.S. Department of Justice**



Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Peter Smith*
*Civil Division*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

August 1, 2005

Mara Verheyden-Hilliard, Esq.
Carl Messineo, Esq.
Merrilyn Onisko, Esq.
Partnership For Civil Justice, Inc.
1901 Pennsylvania Avenue, N.W.
Suite 607
Washington, D.C. 20006

     Re. <u>Alliance for Global Justice, et al. v. District of Columbia, et al.</u>, 01-0811 (PLF)

Dear Counsel:

Enclosed please find two documents produced as a supplemental response to Plaintiff's Second Request for Production of Documents in the above-referenced case. FBI obtained these documents in the course of its preparation for the Fed. R. Civ. P. 30(b)(6) deposition of the FBI, scheduled for August 3. Please note that the Deputation Form is provided subject to the provisions of the protective order in this case.

As you may recall, last week I wrote requesting that plaintiffs amend their Fed. R. Civ. P. 30(b)(6) deposition notice for the FBI deposition consistent with the amendment of the notices for the USSS and ATF Fed. R. Civ. P. 30(b)(6) depositions. I have not heard from you on this issue. We are not prepared to present a witness if the topics are still in dispute. We had understood from correspondence the parties had exchanged, as well as the issuance of amended notices for the USSS and ATF, that the FBI deposition would go forward so long as an amended notice were issued. If, in fact, plaintiffs do not intend to amend their notice for the FBI's Fed. R. Civ. P. 30(b)(6) deposition, please notify me as soon as possible so that we can move for a protective order and instruct the witness not to appear on August 3.

Please contact me at your earliest convenience if you have any questions.

Very truly yours,

KENNETH L. WAINSTEIN
United States Attorney

By: /s/ _____

PETER SMITH
Assistant United States Attorney

cc. Thomas Koger, Esq.
    Counsel for the District of Columbia

2

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION

Alliance for Global Justice, et al. v.
District of Columbia, et al.

Supplemental Response to Plaintiff's Second
Request for Production of Documents

Deputation Form/
WJTTF Memorandum of Understanding

Excised Copy

## DELETION CODES

H.  THE LAW ENFORCEMENT PRIVILEGE - THE DISCLOSURE OF THIS INFORMATION WOULD IMPEDE OR IMPAIR THE EFFECTIVENESS OF AN INVESTIGATIVE TECHNIQUE, METHOD OR PROCEDURE OF THE FBI.

U.S. DEPARTMENT OF JUSTICE
UNITED STATES MARSHALS SERVICE

OATH OF OFFICE AND CREDENTIAL – SPECIAL DEPUTATION
(see reverse side for instructions)

EXPIRATION DATE OF SPECIAL DEPUTATION

07-31-01

District of **Columbia**

I, **John Bruce Louryk**, do solemnly swear (or affirm) that I will faithfully execute all lawful precepts directed to the United States Marshal for the _____ District of **Columbia** or to the appropriate Federal official so designated under the authority of the United States, make true returns, take only lawful fees, and in all things well and truly, without malice or partiality, perform the duties of the Office of Special Deputy United States Marshal during my continuance in that office. I will exercise my authorities under this Special Deputation solely in furtherance of the mission for which I have been specially deputized, and only during my continuance under this Special Deputation. So help me God.

(SIGNATURE OF APPOINTEE)

Subscribed and Sworn to before me this **7th** day of **July**, 19**99**, at **Washington**, **D.C.**
(City)  (State)

(SIGNATURE OF U.S. MARSHAL OR OFFICER ADMINISTERING OATH)

Donald W. Horton
Chief Deputy U.S. Marshal
(TITLE)

NOT VALID UNLESS CERTIFIED ABOVE AND ON THE ATTACHED CREDENTIAL BY THE DIRECTOR OR DEPUTY DIRECTOR OF THE UNITED STATES MARSHALS SERVICE, OR BY A UNITED STATES MARSHAL.

Appointee's Employer: **Metro Transit Police**
Sponsoring Federal Agency: **Metro Transit Police**
Appointee's Supervisor during Special Deputation: _____
(Name of appropriate United States Marshal or designated Federal official)

### PHYSICAL DESCRIPTION

| | | |
|---|---|---|
| Height: 5 | Inches 9½ | |
| Weight: 220 | Pounds | |
| Sex | ☒ Male | ☐ Female |
| Race | Cauc. | |
| Color Eyes | Hazel | |
| Color Hair | Brown | |

COPY 2 – OFFICE OF THE DEPUTY DIRECTOR, USMS

SPACE RESERVED FOR CREDENTIAL (Form USM-3A) WHICH IS ATTACHED TO COPY 3 OF THIS FORM. THE CREDENTIAL, ALSO, MUST BE COMPLETED AND MUST BE SIGNED BY THE APPROPRIATE CERTIFYING OFFICIAL.

Form USM-3
(Rev. 1-21-91)   PRIOR EDITIONS ARE OBSOLETE AND ARE NOT TO BE USED

# Washington Field Office
## Joint Terrorism Task Force

## Memorandum of Understanding

This Memorandum of Understanding (MOU) is entered into by the participating agencies listed in the signatory portion of this document and the Washington Field Office (WFO) of the Federal Bureau of Investigation (FBI).

I. **Purpose**

The purpose of this Memorandum is to set forth a common understanding of the policies which the Participating Agencies will follow for terrorism investigations in Washington, D.C. and Northern Virginia. The guidelines established herein will serve to maximize cooperation and to create a formal, effective task force capable of addressing the most complex terrorist situations in the Washington, D.C. and Northern Virginia area.

II. **Mission**

The primary mission of the Washington Joint Terrorism Task Force (WJTTF) will be to detect and neutralize any terrorist attempt in the Washington, D.C. and Northern Virginia area and to investigate terrorist activities carried out by groups or organizations which fall within the definition of terrorist groups set forth in Title 28, Code of Federal Regulations (CFR), Section 0.85. The secondary mission of the WJTTF is to react to terrorist and bombing incidents and threats.

III. **Organizational Structure of the Task Force**

A. *Members*

The WJTTF shall consist of a combination of Special Agents (SAs) and Investigators from each participating agency.

B. *Direction of WJTTF and Resource Control*

Responsibility for the overall policy and direction of the WJTTF shall rest with the FBI Assistant Director in Charge (ADIC) of WFO. The ADIC will closely coordinate investigative objectives with designated officials from the participating agencies.

C. *Supervision*

Overall supervision of the WJTTF will be the responsibility of a Supervisory Special Agent (SSA) of the FBI who reports to an Assistant Special Agent in Charge (ASAC). The ASAC is the Program Manager for WFO's Terrorism Program. The

ASAC reports to a Special Agent in Charge (SAC). The SAC reports to the ADIC who is the highest ranking FBI official within the Washington Field Office.

Problems or difficulties which may arise during the operation of the task force will be mutually addressed and resolved as expeditiously as possible. Any problems which cannot be resolved by the WJTTF FBI supervisor will be forwarded through the chain of command for resolution. Designated supervisors of the participating agency will also be notified. It is agreed that resolution of any and all problems at the lowest possible administrative level is in the best interest of the WJTTF.

D. *Investigative Personnel*

The signatories to this MOU agree to assign ▓▓▓ each to the Joint Terrorism Task Force. The FBI-WFO agrees to assign ▓▓▓ Special Agents to this task force, along with sufficient clerical and administrative support personnel. The task force is currently comprised of ▓▓▓ each from the United States Secret Service (USSS), the Metropolitan Police Department (MPD), the Bureau of Alcohol, Tobacco and Firearms (BATF), the Immigration and Naturalization Service (INS), the Department of State / Diplomatic Security Service (DOS/DSS), the United States Capitol Police (USCP), the Metro Transit Police (MTP), the Fairfax County Police Department (FCPD), and the Washington Field Office (WFO) of the FBI.

E. *Security Clearances*

Members of the WJTTF are required to have security clearances for access to classified information. Personnel who do not have appropriate clearances will be required to undergo a background investigation conducted by the FBI.

F. *Deputization*

Each representative from state or local law enforcement will be deputized as a Special Deputy United States Marshal. Deputization will ensure that all members of the WJTTF will be able to fully assist in investigations and apprehensions in compliance with all applicable federal statutes. Deputization will not be required for task force members who are also federal law enforcement officers.

G. *Vehicles*

The FBI hereby agrees and authorizes members of the WJTTF to use vehicles owned or leased by the FBI. The use of such vehicles is restricted to official use only and the operational purpose of these vehicles is for surveillance, case management and other official WJTTF investigative activities.

Each agency agrees to be responsible for any negligent act or omission on the part of their respective agencies or its employees and for any liability resulting from the misuse of said vehicles, as well as any damage incurred to those vehicles as a result

of any act or omission on the part of each respective agency or its employees. Additionally, routine maintenance of these vehicles will be the responsibility of the FBI and will include gasoline and oil. Normal repair work on these vehicles will be the responsibility of the FBI.

### H. Communication Equipment

Reliable communication is absolutely essential for law enforcement personnel. WJTTF members from the participating agencies should have radios for direct communication with their home agencies. In addition, the FBI will provide each task force member with a voice privacy radio equipped with FBI frequencies. The WJTTF members will communicate primarily over the FBI radio system. All WJTTF members will take appropriate steps to secure FBI radio equipment from possible theft or tampering, and will immediately notify the FBI supervisor of any such situations.

## IV. Records and Reports

All classified information generated by the FBI or the WJTTF will be controlled solely by the FBI, and will be handled in accordance with FBI policy.

All WJTTF investigative records are the property of, and will be maintained by, the FBI. Investigative reports will be prepared by all WJTTF personnel on FBI forms. Access to, and use of, WJTTF records will be in accordance with Federal law and Department of Justice (DOJ) and FBI regulations and policy, including but not limited to the Freedom of Information and Privacy Acts (FOIPA).

Participating agency personnel may request information for dissemination to their organization. Such dissemination of information will be handled through normal FBI procedures, subject to any agreement made between the FBI and the agency which originated the information.

## V. Physical Location and Access to Investigative Information

The WJTTF will be located at the Washington Field Office building of the FBI, located at 601 Fourth Street, N.W., Washington, D.C., 20535. The telephone number of the WJTTF is (202) 278-4450/4453, fax number (202) 278-4559. To ensure awareness of all WJTTF operations, the officials of the participating agencies will be briefed, upon request, and will be authorized access to appropriate WJTTF records, subject to any pertinent legal and/or policy restriction on access. The officials of all participating agencies and their representatives can contact the WJTTF supervisor directly at any time to receive investigative updates and to request or provide information.

### VI. Commitment of Personnel

The agencies agree to provide personnel on a full-time basis to investigate terrorism matters. The decision on whether to assign an Investigator on a part-time basis can be made on a case by case basis. However, an Investigator working less than full-time on the WJTTF can not be reimbursed for overtime by the FBI. The continued assignment of WJTTF members will be based on performance and will be at the discretion of the FBI and each agency's respective supervisor.

### VII. Investigative Exclusivity

Cases assigned to the WJTTF will be investigated jointly. It is hereby agreed that unilateral action is not in the best interest of the WJTTF. Therefore, participating agencies agree to assign all matters pertaining to terrorism, regardless of the substantive violation, to the WJTTF. Participating agency's personnel will be assigned to work with the FBI SAs who will be dedicated full-time to terrorism matters. It is agreed that there will be no unilateral action taken on the part of any participating agency relating to WJTTF investigations. All law enforcement action will be coordinated and cooperatively carried out.

Inasmuch as the WJTTF will be operating under Attorney General authority, it will be necessary for the WJTTF to adhere to Attorney General Guidelines that have been tested for legal sufficiency. The following subject areas are covered by Attorney General Guidelines, although the list is not meant to be all inclusive: 1. Domestic Terrorism Investigations; 2. Foreign Intelligence and Counterintelligence Investigations; 3. Undercover Operations; 4. Reporting and Use of Information Concerning Violation of Law and Authorization to Participate in Otherwise Illegal Activity; 5. Contacts between the FBI and the Criminal Division; 6. Use of Informants and Sources; and 7. Extraterritorial Operation of Informants and Witnesses. In addition, all participating agencies agree to respect and follow internal operating policies, procedures, guidelines, and regulations of each participating agency insofar as they are not inconsistent with one another. In the event of any inconsistency, the dispute will be resolved in accordance with Section III C above.

### VIII. Assignment of Cases

The actual investigations will be carried out by the WJTTF personnel regardless of agency affiliation. The WJTTF, at times, may be broken into teams in order to bring investigative assignments to logical conclusions as quickly as possible. It is recognized that requests for investigative assistance and for advice on terrorism matters will be received from other police departments and from other FBI offices which do not have task forces. These matters will be coordinated by the WJTTF.

IX. Prosecution

The WJTTF investigative procedures will conform to the requirements for federal prosecution and will, generally, be prosecuted in federal court. A decision can be made on a case-by-case basis whether the prosecution of cases will be at the state or federal level. The final decision will be made by the FBI with concurrence from the appropriate United States Attorney's Office. The use of established investigative methods and techniques and reporting procedures will be consistent with applicable federal law and with the policies and procedures of the FBI.

X. Cooperative Witnesses and Confidential Informants

The WJTTF will abide by the Attorney General Guidelines on the use of Cooperating Individuals and Confidential Informants and by the FBI informant guidelines. The FBI will pay reasonable and necessary informant or cooperative witness expenses incurred by the WJTTF so long as the informant or cooperative witness is opened and operated pursuant to the above guidelines and upon authorization of the appropriate FBI official. Non-FBI informants and cooperating witnesses utilized by the WJTTF will be assigned to both the respective agency's officer or agent and an FBI agent member of WJTTF. An appropriate FBI informant or cooperating witness file will be opened and maintained wherein all information furnished by the informant or cooperating witness to the WJTTF will be maintained. In addition, any recommendations for payments to this informant or cooperating witness will also be documented. The participating agencies further agree that prior to incurring such expenses, they will consult with the FBI's designated supervisor to ensure anticipated expenses will be in furtherance of WJTTF objectives and to ensure that the necessary funding is available.

XI. News Media and Press

All media releases will be mutually agreed upon and jointly handled consistent with existing participant agency guidelines and in conformity with DOJ guidelines regarding such releases.

XII. Amendment of Agreement

This agreement may only be amended by mutual consent of the parties or by subsequent MOU or other agreement between FBIHQ and a controlling regional or national entity governing or supervising the applicable participating agency. The inclusion of additional agencies to the WJTTF will not be considered a formal change to the MOU and therefore will not require approval of each current member of the WJTTF. Upon termination of this understanding, all equipment will be returned to the supplying agency.

XIII. Salaries and Compensation

Salaries of WJTTF members will be paid by their respective agencies. Overtime incurred in the performance of WJTTF responsibilities, when allowable under federal law and to

the extent that federal funding is available for such purposes, will be reimbursed by the FBI pursuant to the terms and conditions of a reimbursement agreement to be executed by the FBI and the agency seeking reimbursement. Overtime, when not reimbursed by the FBI, shall be compensated in accordance with applicable overtime provisions and shall be subject to the prior approval of the appropriate personnel of each respective agency. The FBI shall report all payments made to non-FBI WJTTF members, including but not limited to overtime, to the employee's respective agency supervisor.

### XIV. Liability

Pursuant to the terms and provisions of the Federal Tort Claims Act (Title 28, USC 1346 (b), 2671-2680), and to the exclusions outlined in Section III G of this MOU, the U.S. government, being self insured, may assume financial responsibility for any claims for personal or property damage, including death, caused by negligent or wrongful acts of all federal employees and all properly deputized state and local law enforcement officers who are members of the WJTTF, for actions committed while in the scope of their employment with the WJTTF. In no case will the U.S. government's liability exceed the allowable under the Federal Tort Claims Act. All members of the WJTTF further agree to bring attention to the FBI Supervisor all incidents known to the employee where the U.S. government is or may be liable for a claim under the Federal Tort Claims Act.

### XV. Duration

This agreement will become effective upon the date on which the last of the undersigned representatives of the participating agencies executes the agreement by affixing his/her signature to the agreement, and will remain in effect for a period of one (1) year from that date.

Signatories

_____     6-7-99
Ford Cole                           Date
Contracting Officer
Federal Bureau of Investigation
Headquarters
Washington, D.C.

FORD R. COLE
CONTRACTING OFFICER
FEDERAL BUREAU OF INVESTIGATION

_____     7/6/99
J.C. Carter                         Date
Assistant Director in Charge
Federal Bureau of Investigation
Washington Field Office
Washington, D.C.

_____     8/25/99
Gary L. Abrecht                     Date
Chief of Police
United States Capitol Police
Washington, D.C.

_____     7/30/99
Barry J. McDevitt                   Date
Chief of Police
Metro Transit Police
Washington, D.C.

_____     7/30/99
Colonel J. Thomas Manger            Date
Chief of Police
Fairfax County Police Department
Fairfax, Virginia

_____     _____
Robert E. Langston                  Date
Chief of Police
United States Park Police
Washington, D.C.