UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT FISH,**                       ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.         ) | Civil Action No. 06-1281 (PLF/JMF) |
| ) | |
| **UNITED STATES OF AMERICA,**    ) | |
| ) | |
| ) | |
| Defendant.   ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S RULE 56(f) MOTION**

Plaintiff's Complaint alleges negligence and assault and battery against the United States

of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2675 et seq. in

connection with an injury he allegedly sustained on April 17, 2000.  Plaintiff's Opposition to

Defendant's Motion to Dismiss, or for Summary Judgment and Related Rule 56(f) Motion (Pl.

Opp.).  Document No. 16.  Defendant's initial motion explained that Plaintiff's tort claim is

barred by FTCA's statute of limitations and also by the doctrine of res judicata because the same

claims were, or could have been, raised in an earlier lawsuit involving the same parties, Alliance

for Global Justice et al. v. District of Columbia, et al., Civil No. 01-0811 (PLF/JMF).

Plaintiff's opposition makes a sustained argument that his FTCA claims only recently

accrued.  However, Plaintiff's opposition fails even to respond to some of the key arguments

raised in Defendant's initial papers, such as whether he could have raised the instant claims in

the Alliance case.  To the extent that Plaintiff has failed to respond to any of the arguments in

Defendant's initial papers, he has conceded those arguments and the Court should grant

Defendant's motion on that basis.  Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988)

(consequences for failure to respond to dispositive motion include dismissal of lawsuit).  See also

Kingman Park Civil Association v. Williams, 348 F.3d 1033, 1039 (D.C. Cir. 2003) (in context

of appeal, failure to raise issue amounts to waiver of that issue).

Plaintiff focuses on purported discovery violations by the undersigned counsel of record

in the Alliance case in a last-ditch effort to bootstrap his untimely claims by arguing equitable

tolling.  That this argument is a red herring is clear from the fact that plaintiff is complaining

about discovery which began in 2004, about two years *after* the statute of limitations had already

run on Fish's FTCA claim.  Defendant will address Plaintiff's arguments in detail below.

However, Plaintiff's assertions are so inflammatory that we state unequivocally that FBI's

discovery responses in the Alliance case were, and continue to be, accurate.  The FBI has

received no report of the use of force by any of its personnel in connection with the April, 2000

demonstrations referenced in Plaintiff's Complaint.[1]  Plaintiff presents no evidence that the FBI

"knew" that Det. Louryk was involved in any use of force on April 17, 2000.  In fact, the FBI

currently has no evidence that Det. Louryk was involved in any use of force on that date.  The

fact that Plaintiff disagrees with the FBI's legal or factual position does not mean that there was

any discovery violation in the Alliance case.

---

[1]  Plaintiff repeatedly refers to then-Metro Transit Police Detective John Louryk as an "agent of the Federal Bureau of Investigation."  See, e.g., Pl. Opp. at 1.  This characterization is misleading at best.  Det. Louryk was not in April, 2000, an FBI Special Agent.  Detective Louryk was, during the events at issue here, a Metropolitan Transit Police Detective assigned to the FBI's Joint Terrorism Task Force (JTTF), an entity comprised of local, state and Federal law enforcement personnel.  By memorandum of understanding, local law enforcement personnel assigned to the JTTF are considered to be Federal employees for the purposes of the FTCA.  Pl. Ex. 2 at 7.  In connection with his duties on the JTTF, Det. Louryk was appointed as a Special Deputy U.S. Marshal by the U.S. Marshals Service for the period of July, 1999 to July, 2001.  Pl. Ex. 2 at 6.

In contravention of Local Civil Rules 7(h) and 56.1, Plaintiff neither responded to Defendant's Statement of Facts, nor offered his own.  See LCvR 7(h) ("[a]n opposition to [a summary judgment] motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied upon to support the statement.").[2]  Accordingly, to the extent that the Court needs to look outside the pleadings to resolve Defendant's pending motion, the Court should accept the factual assertions supporting that motion as true.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e).  This Court's Local Rules explicitly provide that in "determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 7(h).  The Court of Appeals has long upheld strict compliance with this Court's local rules on summary judgment.  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002); see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150-51 (D.C. Cir. 1996) (discussing Rule 7(h)'s predecessor rule).

It is undisputed that Plaintiff Fish and the other Alliance plaintiffs, through counsel, filed an April 12, 2002 administrative claim (SF-95) with, inter alia, the FBI.  Def. Ex. 1 at 2.  That administrative claim referenced the complaint in Alliance, which was attached to the claim form.  Id. at 1-2 and 4.  That claim was submitted under the penalty of perjury, upon the express

_____

[2] Plaintiff cannot claim that his Rule 56(f) motion obviates his need or ability to submit his own statement of facts.  The Local Rules do not provide such a qualification.  Nor would that argument explain why Plaintiff failed to respond to Defendant's statement of facts.  In addition, as explained infra, arguments concerning FTCA's statute of limitations almost invariably are resolved on motions.

provision that Fish had a factual basis for that claim against the Federal defendants in the

<u>Alliance</u> case. <u>Id</u>. at 1 (listing potential civil and criminal penalties for false statements on SF-

95). Fish sought damages for "assault and battery (baton beating) (see Complaint ¶¶ 16, 128),"

<u>id</u>. at 5, the same relief he seeks in this case for the same alleged tort. Plaintiff's 2002 FTCA

claim was denied on February 6, 2003. Def. Ex. 3. Plaintiff later presented <u>another</u> FTCA claim

form to the FBI setting forth the same allegations as the 2002 administrative claim. Def. Ex. 5.

A.       Plaintiff's Claims are Barred by the FTCA's Statute of Limitations Because He Failed to
         File Suit Within Six Months of the Denial of His 2002 Administrative Claim.

In its initial papers, Defendant explained that Plaintiff had six months from the February

6, 2003 denial of his administrative claim to file an FTCA district court lawsuit advancing those

claims.[3] He failed to do so and thus his lawsuit is "forever barred." In response, Plaintiff argues

that the claims in this case are not precluded by his earlier FTCA claim. Pl. Opp. at 15 (asserting

that the earlier administrative FTCA claim was a "broad presentment" by Plaintiff's "former

(now dismissed) counsel").[4] Plaintiff claims that he had "no information" about federal

involvement in his alleged attack, Pl. Opp. at 16, yet his counsel, acting on his behalf, submitted

a claim form to the Federal government. Def. Ex. 1.

_____

   [3] 28 U.S.C. § 2401(b) states that: "A tort claim against the United States shall be forever
barred unless it is presented in writing to the appropriate federal agency within two years after
such claim accrues or unless an action is begun within six months after . . .the final denial of the
claim by the agency to which it was presented." The FTCA's commands are "unambiguous" and
courts are "not free to rewrite the statutory text" of the FTCA. <u>McNeil v. United States</u>, 508 U.S.
106, 111 (1993).

   [4] This argument, if true, would seem to suggest that his first administrative claim lacked
any reasonable basis in fact. We also note that Fish's current counsel, the Partnership for Civil
Justice have been his counsel throughout the pendency of the <u>Alliance</u> litigation and signed the
Amended Complaint in that case.

Plaintiff's attempts to distinguish his first FTCA presentment notwithstanding, it is undisputed that he did present those claims to the Federal government in 2002. Fish then argues that his claim did not accrue until 2005, implying that his 2002 presentment was premature. Plaintiff's accrual argument is addressed in detail below. However, once he submitted an FTCA claim, Fish had to timely pursue that claim and follow the relevant procedures. McNeil v. United States, 508 U.S. 106, 111 (1993); United States v. Kubrick, 444 U.S. 111, 113, 117-18 (1979) (discussing presentment requirement of 28 U.S.C. § 2401(b)); Schuler v. United States, 628 F.2d 199, 201 (D.C. Cir. 1980) (section 2401(b) requires both timely presentment of an administrative claim and timely filing of a complaint after the agency's final denial of the administrative claim). For this reason, Plaintiff characterizes his 2002 claim as "unprocessed," Pl. Opp. at 16. In fact, the claim was denied. Def. Ex. 3. Plaintiff did not dispute that paragraph in Defendant's Statement of Facts.

B.    Plaintiff Failed to Present an Administrative Claim within Two Years of the Alleged Tortious Conduct, the Alleged "Assault" in April, 2000.

As noted above, Plaintiff relies chiefly on the argument that his claim did not "accrue" for purposes of the FTCA until 2005, when he submitted another FTCA administrative claim form to the FBI. Pl. Opp. at 10; Compl. at ¶¶ 27-31. There is no question that the FTCA expressly requires presentment of an administrative claim within two years after a tort "claim accrues." 28 U.S.C. § 2401(b). The government's motion explained that a claim "accrues" when a plaintiff has knowledge of the injury and its cause. Stokes v. United States Postal Service, 937 F.Supp. 11 (D.D.C. 1996).

Citing, inter alia, Garza v. BOP, 284 F.3d 930 (8th Cir. 2002), Plaintiff claims that his

5

FTCA claim did not "accrue" until 2005, when he supposedly learned the identity of his "assailant" during the discovery period in the Alliance case. Pl. Opp. at 7-8. Plaintiff misunderstands the relevant law. The "lack of awareness that [the alleged tort-feasor] was a [federal] employee does not alone toll the statute of limitations." Garza, 284 F.3d at 936 (citation omitted). However, Fish argues exactly that. Pl. Opp. at 10 ("Fish knew of MPD involvement in the chain of events, but not of federal involvement."). A plaintiff's FTCA claim accrues whenever it is apparent to a plaintiff that further inquiry about the source of the alleged tort is needed. Garza, 284 F.3d at 935 (quoting Gould v. HHS, 905 F.2d 738, 745 (4th Cir. 1990) ("the statute of limitations under the FTCA 'does not wait until a plaintiff is aware that the alleged tort-feasor is a federal employee'"); Cronauer v. United States, 394 F.Supp.2d 93, 103-04 (D.D.C. 2005) (reviewing cases, rejecting same argument Plaintiff makes in this case and holding that standard is not actual knowledge of Federal government involvement).

Here, the argument that Plaintiff's claim is time barred is even stronger than in Cronauer, 394 F.Supp.2d at 103, where Judge Walton held that because "the plaintiffs in this case were aware of both their injuries and the direct cause of their injuries as soon as the injuries occurred," plaintiffs were time barred. Cronauer involved an FTCA lawsuit to recover for injuries sustained by children who alleged that they were burned by steam while walking over a sidewalk manhole in the District of Columbia. Just as in Cronauer, in this case Fish was aware of his injury (alleged beating) when it occurred and he was aware of the direct cause of his injury (beating by a baton). Moreover, Plaintiff does not claim that he was unaware that his alleged "assailant" was connected with law enforcement. Instead, he argues that he did not know of any Federal

connection.[5]  Here, Fish should have (and obviously did) suspect law enforcement involvement.

Moreover, his actions demonstrate that he suspected Federal involvement much earlier, as

evidenced by the allegations in the Alliance complaint and his 2002 FTCA claim.

In Cronauer, Judge Walton noted that, just as here, the plaintiff had immediately sought

legal counsel and the Cronauer plaintiffs "were obviously aware that someone may have been

negligent," even if they "did not realize that the negligent party may have been the federal

government." Id. at 103.  Judge Walton also observed that given the "distinctive governmental

structure of the District of Columbia, its unique relationship with the United States, and the

prevalence of the United States in the city . . . should have given the plaintiffs reason to believe

that the United States might be a culpable party." Id. at 104.  The undisputed record belies

Plaintiff's purported lack of knowledge because he made these allegations all along, both in the

Alliance case and in tendering an FTCA claim to the Federal government in 2002.

Plaintiff then argues in the alternative that his claim is subject to equitable tolling. Pl.

Opp. at 9-10.  Plaintiff also contends that whether the Court should apply equitable tolling to his

claim involves disputed facts that must await trial. Pl. Opp. at 9.  This argument is flawed in

several respects.  First, the application of a statute of limitations period and equitable tolling are

issues resolved on motions. Garza, 284 F.3d at 930 (resolved on motions); Smith-Haynie v.

District of Columbia, 155 F.3d 575, 580 (D.C. Cir. 1998) (equitable tolling is issue resolved on

motions).  In fact, the Court has a duty to adjudicate the issue on Defendant's motion. Cronauer

v. United States, 394 F.Supp.2d 93, 95-96 (D.D.C. 2005) (district court has duty to address

---

[5] And, of course, that remains to be seen, but such determination is not necessary for the
Court to resolve the pending motion.

FTCA statute of limitations issues on Fed. R. Civ. P. 12(b)(1) motion and Plaintiff bears burden

of demonstrating that the court has subject matter jurisdiction).  For this reason, Plaintiff's Rule

56(f) motion should be denied.

For many years, the Court of Appeals held that statutes of limitations periods in civil

actions against the federal government cannot be extended, even for equitable tolling.  Spannaus

v. United States Dept. of Justice, 643 F.Supp. 698, 700 (D.D.C. 1986), aff'd, 824 F.2d 52 (D.C.

Cir. 1987).  Currently that issue is unsettled in this Circuit.  See Norman v. United States, 467

F.3d 773, 776 (D.C. Cir. 2006) (noting that the Court of Appeals has "never squarely addressed

whether equitable tolling applies to the FTCA's statute of limitations, and we do not do so here")

(citation omitted).  Because of this, both parties have addressed equitable tolling.

In Lawrence v. Florida, 127 S.Ct. 1079 (2007), a criminal defendant failed to establish the

extraordinary circumstances necessary to support equitable tolling of the one-year statute of

limitations for seeking Federal habeas relief.  The United States Supreme Court reaffirmed the

existing law requiring a party seeking equitable tolling to show that he or she has been pursuing

his or her rights diligently and that some extraordinary circumstance stood in the way.  Id. at

1085 (quotation and citation omitted).  See also Norman v. United States, 467 F.3d 773, 776

(D.C. Cir. 2006) (discussing standards for equitable tolling).  In addition, equitable tolling is to

be applied "only sparingly."  Id. at 775 (quotation omitted).  Assuming arguendo that the FTCA's

limitations can be tolled, Plaintiff's tort claim is untimely because he had ample opportunity, in

fact many years, to pursue the identity of his alleged "assailant."

The gravamen of Plaintiff's tolling argument is that the FBI's conduct prevented him

from learning about the FBI's purported role in the allegations set forth in his Complaint until

August, 2005.  FBI takes exception to the false and inflammatory claims that appear throughout

Plaintiff's Opposition that the FBI deliberately "concealed" information and "misled" Plaintiff

during discovery in the <u>Alliance</u> case.[6]  Pl. Opp. at 1-2, 4 (claiming "inaccurate or false"

statements by government counsel, including the undersigned counsel of record), 6 (claiming that

FBI did not explain purported "willful withholding and concealment" of documents).

 Plaintiff is operating on a series of false assumptions.  As we stated in our initial

memorandum, if Plaintiff truly believed those allegations, he would have raised them during the

discovery period in the <u>Alliance</u> case, which he did not do.  Plaintiff did not respond to this point

in his opposition, and has not explained why he took no action in the <u>Alliance</u> case with respect

to these purportedly "inaccurate or false" statements.  However, the answer to that question is

easy to discern: Plaintiff raises the issue now in the context of this briefing, long after discovery

in the <u>Alliance</u> case has closed as to the Federal defendants, because it suits his argument for

equitable tolling.

 The Federal government's discovery responses and deposition answers in <u>Alliance</u> were,

and are, correct.  The FBI did not receive or generate any documents or reports of the use of force

by any FBI personnel in connection with the April, 2000 World Bank/IMF spring meeting

protests.  <u>See</u> Ex. 1 attached (additional excerpts from FBI 30(b)(6) deposition explaining in

detail efforts to inquire about issue and fact that FBI did not receive any report of the use of force

by its personnel, either in a document or when FBI canvassed its personnel).  <u>See also</u> Def. Ex. 4

---

[6] However, these allegations do not create a genuine dispute of material fact preventing a
ruling for Defendant on the instant Motion.  Courts consider and resolve statute of limitations
issues, and where applicable, tolling issues, on dispositive motions.  <u>Smith-Haynie</u>, 155 F.3d at
580.

at 32 (excerpt of transcript of FBI 30(b)(6) deposition).

In addition, no witness in the <u>Alliance</u> case positively identified Metro Transit Police Detective Louryk as the individual who allegedly assaulted Plaintiff Fish.[7]  Contrary to Plaintiff's argument, during discovery in the <u>Alliance</u> case, the FBI's 30(b)(6) witness, Supervisory Special Agent James Rice, testified that he could not be sure that the person Plaintiff alleges assaulted him is Detective Louryk.  Ex. 4 at 45.  The FBI made clear that Detective Louryk's assignment during the events at issue merely was to "stay on the periphery of the ongoing events and to report back any suspicious activity or any threats . . . ."  Ex. 4 at 43-44.[8]  Nonetheless, when Plaintiff's allegations concerning Det. Louryk came to FBI's attention during witness preparation in the <u>Alliance</u> case, FBI immediately <u>obtained</u> materials that it did not previously possess from the U.S. Marshals Service (USMS) so that the plaintiffs in that case, including Plaintiff Fish, would be able to depose the FBI's 30(b)(6) witness on this issue.  <u>See</u> Pl. Ex. 2 (USMS

---

[7]  Plaintiff claims that it "has now been established" that his alleged "assailant" is Detective Louryk, who was, during the events at issue here, a Metropolitan Transit Police Detective assigned to the Joint Terrorism Task Force (JTTF), an entity comprised of local, state and Federal law enforcement personnel.  Pl. Opp. at 4.  Plaintiff relies on the testimony of MPD Captain Jeffrey Herrold, but he misstates the record testimony.  <u>See</u> Pl. Ex. 3 at 4, lines 3-4. Capt. Herrold simply repeated what he saw on the "Indymedia.org" webpage Fish references in his opposition.  <u>See</u> Pl. Opp. at 11.  Capt. Herrold did not say that he agreed with the assertions on the webpage.  Perhaps demonstrating Fish's lack of confidence in this argument, the reference to Capt. Herrold's testimony is relegated to a footnote in Plaintiff's opposition.  Pl. Opp. at 4, note 2 [there are two footnotes numbered "1," we are referring to the second footnote in the opposition].

[8]  Local law enforcement officers working with the FBI's Joint Terrorism Task Force (JTTF) can be treated, with certain limitations, as Federal employees for purposes of the FTCA. <u>See</u> Compl. at ¶¶ 6-8.  Defendant in no way waives, and hereby reserves, any defense that on the merits of the alleged "assault" on Plaintiff, including but not limited to whether the individual photographed by Plaintiff is Detective Louryk and whether, if so, Detective Louryk was acting "within the scope of his employment" with the JTTF.

documents concerning Det. Louryk).[9]

Plaintiff additionally complains that FBI "refused" to go to the Metro Transit Police to obtain Det. Louryk's telephone number, which he claims violated FBI's discovery obligations. Compare Pl. Opp. 7 with Def. Ex. 4 at 6-7 (FBI 30 (b)(6) witness explaining that FBI does not possess Det. Louryk's phone number but could get it from WMATA or the Metro Transit Police).[10] See also Def. Ex. 4 at 9, line 7. However, as the undersigned explained to Plaintiff's counsel at that time, the Federal Rules of Civil Procedure limit a party's discovery obligations to information that is in the party's "possession, custody or control." Fed. R. Civ. P. 34(a). See also Fed. R. Civ. P. 26(e), 33(a). Defendant is not under an obligation to act as Plaintiff's private

---

[9]  During the discovery period in the Alliance case, the Alliance plaintiffs, through counsel, had shown a series of photographs and video images of a person who Fish now claims to be Det. Louryk to various MPD witnesses. During witness preparation for the FBI 30(b)(6) deposition in the Alliance case, the undersigned counsel of record showed the same photographs and video to the FBI's 30(b)(6) witness and explained Fish's argument to the FBI. When the FBI's 30(b)(6) witness was able to identify Det. Louryk from some of the photographs or video images (but as explained the FBI did not identify Det. Louryk in the image of the alleged assault), FBI asked the USMS for a copy of Det. Louryk's deputation form, which was then provided to the Alliance plaintiffs. FBI also provided the Alliance plaintiffs with the memorandum of understanding that is part of Pl. Ex. 2. FBI provided these materials so that, given their arguments, the Alliance plaintiffs would have those materials for use in the deposition of the FBI in that case. Neither of the records that are part of Pl. Ex. 2 were responsive to the Alliance plaintiffs' discovery requests. For example, the MOU has to do with FTCA liability, not with the any use of force during the April, 2000 demonstrations. Similarly, the deputation form does not reflect any use of force, or identify any individual as having used force during the time period in question. Instead, the FBI went beyond its strict discovery obligations and provided these records in an abundance of caution and in light of the theory that plaintiffs had been developing in depositions of MPD witnesses.

[10]   The Metro Transit Police is a part of WMATA. See http://www.wmata.com/about/mtpd/default.cfm. The undersigned notes that WMATA has its own counsel and that any request for information concerning Det. Louryk would have to be addressed to counsel for WMATA.

investigator. The method for obtaining information from persons who are not parties to an

action, such as the United States Marshals Service or the Metro Transit Police in the Alliance

case, is through a Fed. R. Civ. P. 45 subpoena. See Fed. R. Civ. P. 34(c). Plaintiff recognized

this, because he did, in fact, serve a subpoena on the Washington Metropolitan Transit

Administration (WMATA) in the Alliance case. Pl. Opp. at note 1.

Furthermore, as Defendant previously mentioned, the Alliance plaintiffs could have

submitted to the FBI the picture of the alleged assailant referenced in Plaintiff's Complaint, or

made the specific inquiries of FBI that they made of the District of Columbia, but they did not do

so. See, e.g., Pl. Opp. at 12 (describing efforts directed at MPD to identify person in photograph

supposedly taken by Fish of his "assailant"). As explained, supra, FBI immediately provided

information to the Alliance plaintiffs about Det. Louryk in an abundance of caution after the

undersigned counsel of record had shown various photographs and video images, and explained

Fish's arguments, to Supervisory Special Agent James Rice in the course of preparing for Rice's

deposition in the Alliance case.

Even taking Plaintiffs' argument that during the discovery period in the Alliance case the

FBI withheld information or misled Plaintiff concerning Det. Louryk's identity as true (which we

vehemently deny), that argument is irrelevant. Discovery did not even begin in the Alliance case

until 2004, approximately four years after Fish's injury and two years after the FTCA's

limitations period ran.[11] Moreover, Plaintiff concedes that he knew that his alleged "assailant"

was a law enforcement officer at the time of his purported injury. Pl. Opp. at 2. Thus, even on

---

[11] FBI served its responses to the Alliance plaintiffs' interrogatory requests on June 25, 2004. See Def. Ex. 6.

the facts as Plaintiff argues them, Plaintiff's claim is untimely and should not be equitably tolled.

C.    Plaintiff's Claims are Barred by *Res Judicata.*

Observing that Plaintiff raised these same claims in the <u>Alliance</u> case, the government

explained in its initial papers that the doctrine of <u>res judicata</u> prevents repetitious litigation

involving the same causes of action or the same issues.  <u>I.A.M. Nat'l Pension Fund v. Indus. Gear</u>

<u>Mfg. Co.</u>, 723 F.2d 944, 946 (D.C. Cir. 1983).  In short, "claim preclusion forecloses all that

which might have been litigated previously," while issue preclusion "prevents the relitigation of

any issue that was raised and decided in a prior action."  <u>I.A.M. Nat'l Pension Fund</u>, 723 F.2d at

949.

In response, Plaintiff argues that he proceeded in <u>Alliance</u> "solely against the District of

Columbia" and not as against the FBI or the United States.  Pl. Opp. at 2.  <u>See also</u> Pl. Opp. at 17

(claiming "Fish did not advance claims against the Federal Government in the <u>Alliance</u> case").

While that is factually incorrect (see extended discussion of <u>Alliance</u> and <u>Fish</u> claims in

Defendant's Memorandum), even if true Plaintiff's claims still would be barred by <u>res judicata</u>.[12]

Even if he did not raise these claims in <u>Alliance</u> as against the Federal government (which we

dispute), clearly, Plaintiff could have raised these claims and thus they are barred.

_____

[12]  Plaintiff Fish is also a plaintiff in the <u>Alliance</u> case.  In that case, Fish complained that he "was injured by excessive police force on April 17, 2000 . . . [he] was beaten over the head by an undercover officer wielding a baton as he was taking pictures."  <u>Alliance</u> Compl. at ¶ 16.  <u>See also</u> <u>id</u>. at ¶¶ 128 (same), 169 (alleging that "Defendants' actions in using excessive force against certain individual plaintiffs constituted assault and battery against those plaintiffs).  The United States is a party-defendant in the <u>Alliance</u> case, as is the Director of the FBI.  <u>Alliance</u> Compl., caption.  In fact, Plaintiff Fish has identified the <u>Alliance</u> case as being "related" to this case.  In this case, Plaintiff Fish alleges that he "was beaten over the head with a baton by an undercover or plain clothes law enforcement officer."  Compl. at ¶ 11.

Plaintiff does not respond to, and thus has conceded Defendant's explanation that issue

preclusion can apply even when a judgment is not "final" as to all claims.  Restatement of

Judgments 2d, § 13 ("for purposes of issue preclusion (as distinguished from merger and bar),

"final judgment" includes any prior adjudication of an issue in another action that is determined

to be sufficiently firm to be accorded conclusive effect").  The Comments to the Restatement

explain that a "judgment may be final in a res judicata sense as to a part of an action although the

litigation continues as to the rest."  Id. at Comment (e).

Plaintiff also failed to respond to the government's argument that even if res judicata does

not bar Plaintiff's lawsuit, the Colorado River doctrine does.  Foster-El v. Baretta U.S.A. Corp.,

163 F.Supp.2d 67, 70-72 (D.D.C. 2001) (applying test set forth in Colorado River Water

Conservation Dist. v. United States, 424 U.S. 800 (1976) to abstain from exercising jurisdiction

over claims in order to avoid "duplicative litigation" involving two cases with the same parties

and claims).[13]  Significantly, although proceeding here against the Federal government, Fish has

not, to our knowledge, dismissed his claims against the District of Columbia for excessive force,

which he says were his only claims in the Alliance case.  Pl. Opp. at note 1 and page 17.  Thus,

even in Plaintiff's view, he is litigating the same claims against different defendants in two

different cases before the same court, which runs afoul of the Colorado River doctrine.  Plaintiff

also failed to respond to the government's argument that this case is barred because Plaintiff Fish

could have raised his claims against the Federal government in the Alliance case, even if he did

---

[13]  The principle of avoiding duplicative litigation is well settled.  Colorado River Water
Conservation Dist. v. United States, 424 U.S. 800 (1976).  To the extent that the Court concludes
that issue preclusion does not bar Plaintiff's lawsuit, the Colorado River doctrine concerning
duplicative litigation does.

not in fact do so.  Plaintiff's failure to respond effects a waiver of the argument.  See, e.g., Fox v.

Strickland, supra.

Finally, we note that Plaintiff's own opposition undercuts his argument that his claims

were not part of the Alliance case.  Plaintiff's opposition discusses the fact that he served a

subpoena on WMATA in the Alliance case concerning his allegations.  Pl. Opp. at note 1.  The

Federal defendants in the Alliance case objected to the subpoena only after they learned of the

subpoena from counsel for WMATA, because the Federal government had not been served with

the subpoena, and because the court had limited discovery in the Alliance case to the completion

of previously-noticed depositions.  The Court had not allowed the taking of any additional

depositions.  See correspondence attached as Exhibits 2 and 3.

For the foregoing reasons, Plaintiff's claims should be dismissed with prejudice.

Respectfully submitted,


___s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


___s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372