UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT FISH,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**UNITED STATES OF AMERICA,** )<br>)<br>)<br>Defendant. ) | Civil Action No. 06-1281 (PLF/JMF) |

**DECLARATION OF PETER S. SMITH**

I declare as follows:

1) This declaration responds to the Court's order, issued during an October 1, 2007 hearing in the above-captioned case, that I state in a declaration: (1) whether or not, when the Federal Defendants served their objections to the subpoena issued to the Washington Metropolitan Area Transit Administration (WMATA) in Alliance for Global Justice, et al. v. District of Columbia et al., Civ. No. 01-0811 (PLF/JMF) (hereinafter "the Alliance case") upon the plaintiffs in that case, I was aware of or was shown the deputation papers for Metropolitan Transit Police Detective John B. Louryk as a Special Deputy United States Marshal that were produced to the plaintiffs in the Alliance case and later filed in the above-captioned case in connection with Defendant's Motion to Dismiss; and (2) whether, as of the date that the Federal Defendants in the Alliance case objected to the subpoena, Supervisory Special Agent James Rice had said anything to me about the photographs he had seen during his preparation for the FBI's Fed. R. Civ. P. 30(b)(6) deposition in the Alliance case indicating that Metropolitan

> Transit Police Det. John B. Louryk appears in one of those photographs. This declaration is based upon my recollection as counsel of record in the <u>Alliance</u> case, and my review of my office's official litigation files for that case.

2) My review of my office's litigation files indicates that I received the deputation papers on July 22, 2005. I am not sure when I first learned of the existence of the deputation papers, but these matters came to light in connection with the <u>Alliance</u> plaintiffs' subpoena to WMATA for information about Det. Louryk. I believe that I first learned of the existence of the deputation papers on or about July 8, 2005. To the best of my recollection, the witness preparation of Supervisory Special Agent James Rice as a witness in the <u>Alliance</u> case was conducted on August 1, 2005. Supervisory Special Agent Rice did not say anything to me about the photographs he was shown during his preparation for the FBI's Fed. R. Civ. P. 30(b)(6) deposition in the <u>Alliance</u> case prior to August 1, 2005, the date of his preparation to testify as a Fed. R. Civ. P. 30(b)(6) witness for the FBI.

3) In connection with learning of the subpoena to WMATA, I asked the Federal defendants to inquire into these issues. On August 1, 2005, Supervisory Special Agent Rice informed me that the person depicted in one of the photographs we reviewed might have been Metropolitan Transit Police Det. John B. Louryk. Supervisory Special Agent Rice so testified in the <u>Alliance</u> case on August 3, 2005. <u>See</u> Ex. 1 attached, excerpt of deposition transcript at 45.

4) Contrary to counsel for Plaintiff Fish's statements at the October 1, 2007 hearing in this case, my review of my office's official litigation files shows that in letters

dated July 8, 2005, both WMATA and the Federal Defendants objected to the above-referenced subpoena on procedural grounds. A copy of WMATA's letter is attached as Exhibit 2.[1] A copy of my office's July 8, 2005 letter in the <u>Alliance</u> case was filed with the Court as an exhibit to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss in this case and is attached for the Court's convenience as Ex. 3.

5)   The Federal defendants in the <u>Alliance</u> case objected to the subpoena on July 8, 2005, only after they learned of the existence of the subpoena from counsel for WMATA. The Federal Defendants had two principle objections to the subpoena. First, the Federal defendants in the <u>Alliance</u> case objected because this office was not served with either the subpoena itself, or any notice whatsoever, contrary to the Federal Rules of Civil Procedure. Fed. R. Civ. P. 30 provides that: "A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." In addition, the method for obtaining information from persons who are not parties to an action, such as the Metro Transit Police in the <u>Alliance</u> case, is through a Fed. R. Civ. P. 45 subpoena. <u>See</u> Fed. R. Civ. P. 34(c). Fed. R. Civ. P. 45(b)(1) expressly states that "prior notice . . . shall be served on each party . . . ." Second, the Federal defendants objected to the subpoena because the parties had jointly moved the Court to enlarge the discovery period <u>for the limited purpose of completing</u>

---

[1] It appears from my review of the official litigation files in the <u>Alliance</u> case, that the Federal Defendants in <u>Alliance</u> were never provided with the notice seeking WMATA's Fed. R. Civ. P. 30(b)(6) testimony, which is referenced in WMATA's July 8, 2005 objection letter.

certain previously-noticed depositions. The <u>Alliance</u> plaintiffs were improperly trying to avoid this Court's order by attempting to depose WMATA, which exceeded the scope of the discovery permitted by this Court in the <u>Alliance</u> case. In the <u>Alliance</u> case, the parties' joint motion dated May 31, 2005, see Docket No. 192 in <u>Alliance</u>, states that the purpose of extending the discovery period is to "complete the approximately thirty depositions remaining in this case." Document 192 at 1 (attached for the Court's convenience as Ex. 4). As an attachment to the motion, the parties provided the Court with a schedule of the remaining depositions.[2] The Court granted that motion on June 7, 2005. The WMATA deposition was never noticed and was not reflected in the attachment to the joint motion.

6)  It is perfectly appropriate to require the <u>Alliance</u> plaintiffs to comply with the Federal Rules of Civil Procedure and the orders of this Court, and my clients would expect, and deserve, no less. In fact, such a response is required by my ethical duty to be a "zealous advocate." As I explained in the October 1, 2007 hearing in this case, I would object to any subpoena, in any of my cases, that was not properly served. Likewise, I would object to any proposed discovery, in any of my cases, that exceeded the scope of the Court's discovery order in that case. The purpose of my July 8, 2005 letter was to ensure that the Federal defendants would receive proper notice of any deposition in the <u>Alliance</u> case and to ensure

---

[2] I see no reason why the <u>Alliance</u> plaintiffs could not have included Fish's alleged assaulter in this list, even as a "John Doe."

plaintiffs' compliance with the operative discovery order in that case.

7) On July 20, 2005, I wrote counsel for the <u>Alliance</u> plaintiffs a letter to follow up on my July 8, 2005 letter. A copy of that letter is attached as Ex. 5. Counsel for the <u>Alliance</u> plaintiffs had failed to respond to my July 8, 2007 letter. <u>Id</u>. at 1. That left the status of the WMATA deposition unclear. Therefore, my July 20, 2005 letter repeated the bases for our objections to the WMATA subpoena. As I clearly stated in the July 20, 2005 letter, we proposed that the parties go forward with the depositions that had been agreed upon by the parties. Had the <u>Alliance</u> plaintiffs properly noticed the WMATA deposition for a new date and obtained a revised discovery order or the agreement of the parties, they could have deposed WMATA in the <u>Alliance</u> case. Ex. 5 at 2.

8) Subsequently, although the discovery period had closed as to the Federal defendants in the <u>Alliance</u> case, there were discussions between the parties in that case concerning the <u>Alliance</u> plaintiffs' desire to depose Det. Louryk. The Federal defendants in the <u>Alliance</u> case repeatedly informed counsel for plaintiffs in that case that they would not object to that deposition being taken outside of the discovery period if it were properly noticed. <u>See</u> Ex. 6 attached (letter dated September 6, 2005, stating that should "plaintiffs notify us of what additional discovery they are seeking, we will consider whether we will consent to a motion to enlarge the discovery period for a limited purpose, such as completing certain specified depositions"); Ex. 7 attached (letter dated September 19, 2005 stating that "we will consider agreeing to limited discovery [concerning Det. Louryk] if

5

plaintiffs explain what they intend with more specificity"); Ex. 8 attached (Letter dated October 11, 2005, stating that "As you know, this office does not represent Detective Louryk and we cannot produce him for deposition. You correctly note that since Detective Louryk is not employed by the Federal defendants he is a third-party who must be served with a subpoena. It is not clear at present whether Detective Louryk is represented by counsel and, if he is, who represents him. Federal defendants take no position on plaintiffs' proposal to reopen discovery for the limited purpose of conducting a deposition of Detective Louryk."); Ex. 9 attached, letter from counsel for Alliance plaintiffs dated October 26, 2005 scheduling deposition of Det. Louryk for October 31, 2005); Ex. 10 attached (e-mail exchange dated December 1, 2005, in which I explained that Federal defendants in Alliance "take no position [on] and will not file an opposition" to any motion to depose Det. Louryk and stating that "should plaintiffs set up a deposition of Det. Louryk we have the right to service of notice of the deposition and to attend").

9)  My review of the official litigation files in this case indicates that I learned from the fact of the subpoena itself, and counsel for WMATA, that the Alliance plaintiffs were interested in documents and testimony related to "Det. Bruce Lorrick." In response, I asked the Federal defendants in the Alliance case to conduct an inquiry into the relevance of this witness. I believe that at some point thereafter, I became aware of the deputation form and I requested that FBI agency counsel obtain from the United States Marshals Service a copy of "Det. Bruce

Lorrick's" deputation form, which I received on July 22, 2005 (concerning "John Bruce Louryk").

10) I pursued this issue with Supervisory Special Agent James B. Rice during witness preparation for the FBI's Fed. R. Civ. P. 30(b)(6) deposition in the Alliance case. On August 1, 2005, during that witness preparation, I showed Supervisory Special Agent Rice the deputation form and the video images and photographs that counsel for the Alliance plaintiffs had been showing the MPD witnesses in that case, which they claimed related to the alleged assault on Plaintiff Fish. Supervisory Special Agent Rice informed me that Det. John B. "Bruce" Louryk had been assigned to the Joint Terrorism Task Force (JTTF) during the time period relevant to Plaintiff's allegations.[3] I believe that it was counsel for WMATA who informed me that by Memorandum of Understanding (MOU), personnel assigned to the JTTF are considered Federal employees for purposes of the FTCA in connection with the scope of their JTTF duties. I do not know when I was so informed, but it predated the August 1, 2005 witness preparation of Supervisory Special Agent Rice, because I believe that, during that preparation session, I showed Supervisory Special Agent Rice the MOU and the deputation

---

[3] Plaintiff Fish repeatedly refers to then-Metro Transit Police Detective John Louryk as an "agent of the Federal Bureau of Investigation." See, e.g., Pl. Opp. at 1. This characterization is misleading. Det. Louryk was not in April, 2000, an FBI Special Agent. I understand that Detective Louryk was, during the events at issue here, a Metropolitan Transit Police Detective assigned to the FBI's Joint Terrorism Task Force, an entity comprised of local, state and Federal law enforcement personnel. In connection with his duties on the JTTF, Det. Louryk was appointed as a Special Deputy U.S. Marshal by the U.S. Marshals Service for the period of July, 1999 to July, 2001. See Docket No. 16 in this case, Ex. 2 at 6.

form that I produced to plaintiffs in the <u>Alliance</u> case later that same day.

11) Fish's claim that the FBI improperly "withheld" or "concealed" information about Det. Louryk is incorrect. The Federal defendants reacted to information learned from the <u>Alliance</u> plaintiffs, through their subpoena to WMATA and their photographs and video images. As explained in detail in the reply memorandum submitted to the Court by Defendant in this case, during spring 2005 depositions in the <u>Alliance</u> case, the <u>Alliance</u> plaintiffs, through counsel, had shown a series of photographs and video images of an unidentified individual who Plaintiff Robert Fish now claims to be a Metropolitan Transit Police Detective, John B. Louryk, to various District of Columbia Metropolitan Police Department (MPD) witnesses.

12) When the FBI's 30(b)(6) witness, Supervisory Special Agent Rice, was able to identify Det. Louryk from some of the photographs or video images (the FBI did not identify Det. Louryk in the image that Plaintiff Fish claims is the alleged assault upon him), FBI immediately provided the <u>Alliance</u> plaintiffs with a copy of Det. Louryk's deputation form and the memorandum of understanding that is part of Ex. 2 to Docket Number 16 in this case. FBI provided these materials to the <u>Alliance</u> plaintiffs so that, given their arguments, they would have those materials for use in the deposition of the FBI's Fed. R. Civ. P. 30(b)(6) witness. On that same day, Supervisory Special Agent Rice, agency counsel for FBI, and I, contacted Det. Louryk telephonically in order to gather more information. That conversation is reflected in the FBI's 30(b)(6) testimony in the <u>Alliance</u> case. Ex.

1 attached at 47-49.

13) Although Plaintiff Fish argues that the deputation form should have been provided much earlier in discovery in this case, neither of the records that are part of Docket Number 16, Ex. 2 in this case, are responsive to the <u>Alliance</u> plaintiffs' discovery requests, which sought information relating to any use of force by the Federal Defendants. I am unaware of the <u>Alliance</u> plaintiffs, including Mr. Fish, ever specifically identifying a discovery request for which they claim these materials would be responsive. The Deputation Form does not reflect any use of force, nor identify any individual as having used force during the time period in question. In fact, FBI did not even possess a copy of the deputation form until sometime after July 8, 2005, when FBI obtained it from the United States Marshals Service by specific request. The Federal Rules of Civil Procedure limit a party's discovery obligations to information that is in the party's "possession, custody or control." Fed. R. Civ. P. 34(a). <u>See also</u> Fed. R. Civ. P. 26(e), 33(a). Thus, the FBI went beyond its discovery obligations in obtaining these materials. Moreover, as explained above, I was unaware of the deputation form until I learned of it in connection with the <u>Alliance</u> plaintiffs' subpoena to WMATA.

14) In addition, there was no reason to provide the form to the <u>Alliance</u> Plaintiffs prior to August 1, 2005, because the FBI's inquiry was not complete and thus FBI did not "know" of any connection between the images in the photos and video shown to MPD witnesses in the <u>Alliance</u> case, Metropolitan Police Detective Louryk, Plaintiff Fish's claims in the <u>Alliance</u> plaintiffs' Amended Complaint concerning

excessive force, the JTTF and the FBI, until the witness preparation of Supervisory Special Agent James Rice on August 1, 2005.[4]  Even then, the FBI went beyond its discovery obligations and provided these records to counsel for the Alliance plaintiffs in advance of the FBI's Fed. R. Civ. P. 30(b)(6) deposition in that case in an abundance of caution and in light of the theory that the Alliance plaintiffs had been developing in depositions of MPD witnesses, not because of anything that I "knew," or that the FBI "knew" about Det. Louryk.[5]  To date, no FBI personnel have identified the person appearing in the photo and video images that Plaintiff Fish claims were taken during the alleged assault upon him.  Thus, the FBI's discovery responses were, and remain, correct and the FBI does not, even now, "know" of any connection between Det. Louryk and Plaintiff Fish's claims in this case.  See Ex. 1 attached at 45, 47 (excerpts from FBI 30(b)(6) deposition explaining in detail efforts to inquire about issue, and the fact that FBI did not receive any report of the use of force, either in a document or when FBI canvassed its personnel).  As far as I know, Plaintiff Fish's allegations about Det. Louryk are just that, unsubstantiated allegations.

---

[4]  In fact, as explained, the FBI still does not "know" of any use of force by Det. Louryk against Fish or any other Alliance plaintiff.

[5]  To my knowledge, the only third-party local law enforcement officer for whom the Alliance plaintiffs sought information (through subpoena), or attempted to depose, was Det. "Lorrick."  That is why the Federal defendants in the Alliance case, on August 1, 2005, produced to plaintiffs in that case a deputation form for Det. Louryk and not for any other person.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 14, 2007.

                                                s/Peter S. Smith
                                    PETER S. SMITH
                                    Assistant United States Attorney
                                    United States Attorney's Office, Civil Division
                                    555 4th Street, N.W.
                                    Washington, D.C. 20530