UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT FISH | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1281 (PLF/JMF) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**OBJECTIONS TO THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS (DOCKET ENTRY NO. 29, "CORRECTED REPORT AND RECOMMENDATION")**

Plaintiff Robert Fish respectfully files objections to the Corrected Report and Recommendation (docket no. 29) of United States Magistrate Judge John H. Facciola with respect to Defendant's Motion to Dismiss or for Summary Judgment and also with respect to Plaintiff's related Rule 56(f) Motion.

Fish respectfully objects to that Report and Recommendation insofar as it recommends the complaint be dismissed and suggests that the related Rule 56(f) Motion be denied. It constitutes an error of law that the Report and Recommendation does not address Fish's contention that the filing of the complaint was timely under the diligent discovery accrual standard. Nor does the Report and Recommendation address the claims of deliberate concealment by the defendant of the involvement and status of the Fish's assailant as a federal deputy working full time for the FBI Joint Terrorism Task Force at the direction of James Rice. Additionally, Fish objects that the Report and Recommendation constitute an error of law insofar as it holds that Fish's FTCA claims are barred by virtue of the administrative denial of a class-

1

based FTCA claim[1] where it is undisputed that the class definition pertains only to those persons allegedly wrongfully arrested on April 15, 2000 and does not in any way encompass in circumstances related to the April 17, 2000 assault against Fish.

Plaintiff Robert Fish's instant civil lawsuit pertains to an assault perpetrated by a federal agent and deputy on April 17, 2000 (during International Monetary Fund / World bank protests) in which an individual who concealed his identity as a federal agent beat Robert Fish over the head with a metal pipe-like object believed to be a law enforcement ASP baton. The assailant handed Fish, bloodied and after a brief loss of consciousness, to a colleague, a uniformed MPD officer who dragged Fish and dumped him on a street corner some feet from MPD Police Chief Charles Ramsey.

Fish did not know of the causal connection between the Federal Government and his injury and ultimately filed suit against the District of Columbia for related monetary damages in Alliance for Global Justice et al. v. District of Columbia et al., Civil Action No. 01-00881. That lawsuit was a consolidation of claims of individuals and a class for damages connected to law enforcement violations during the protests.

Fish is not a member of the class component of that lawsuit. The class component of that lawsuit pertained to the mass arrest of nearly seven hundred protestors, bystanders and others in a mass arrest on April 15, 2000. See Civil Action. No. 01-00881, Docket Entry No. 250 (granting class certification for liability purposes to "all persons who were detained and arrested on April 15, 2000 near the area of 20th Street, N.W. and I and K Streets, N.W. in connection with the protest against the Prison Industrial Complex during the IMF/World Bank demonstrations"). No

---

[1]   See Report and Recommendation at 9 ("The denial of the class administrative tort claim was in accordance with the requirements of the FTCA and unquestionably gave him six months to file his suit against the United States."); See also Order to Show Cause (Fish "must show cause why his participation in a related class action does not preclude his advancing his individual claims in the instant action") (docket entry no. 23).

element of the <u>Alliance</u> lawsuit advanced claims for monetary relief against the United States. No element of the civil lawsuit was filed pursuant to the FTCA seeking monetary relief.

For years after the assault both within litigation as a matter ancillary to his claims for damages against the District of Columbia for the assault as well as outside of litigation through other measures, Fish has diligently sought to determine the identity of his assailant and any law enforcement affiliation. <u>See</u>, Pl's Opp to Defs' Mot to Dismiss or for Summary Judgment and Related 56(f) Motion (docket entry no. 16) at 11 – 15.

Within litigation, through its official spokesperson James Rice III, the FBI has repeatedly provided sworn responses to discovery demands in which the FBI (through Rice) denied any involvement by its personnel in the use of force against protestors generally and against Fish specifically. <u>See</u>, <u>id.</u> at 3 – 4. The FBI swore that its "very indirect roles" in any matter related to the <u>Alliance for Global Justice</u> claims rendered any such involvement virtually impossible. The representations by the FBI through its spokesperson James Rice were both emphatic and represented to be made upon thorough review of the collective knowledge of the FBI and its personnel involved in the protests.

The representations of a lack of federal or FBI involvement, at least with respect to the assault upon Fish, were consistent with other information known or discovered by Fish, including the fact that his assailant was working with a uniformed MPD officer at the time of the assault and the fact that the then-unidentified assailant is observed on video engaged in law enforcement activity (the raid and closure of protestors' Convergence Center on April 15, 2000) as a part of an apparent team of plain clothed MPD officers with the MPD Intelligence Unit. Until August, 2005, there was no reason to know of the Federal Government causal connection

to the beating, that it was an FBI deputy assigned full time to the Washington Joint Terrorism Task Force who assaulted Fish.

In an unexpected development, caused by the then-imminent deposition of James Rice in the <u>Alliance for Global Justice</u> case, on August 1, 2005 the FBI produced documents consisting of deputation papers for an individual by the name of John B. Louryk. This was a completely unexpected disclosure. It was not provided as obligated in response to the timely propounding in <u>Alliance</u> of plaintiffs' Januuary 19, 2002 First Set of Requests for Production to the Federal Government which encompassed all documents related to the Fish assault. It was not produced as obligated in response to plaintiffs' Second Set of Requests for production which also demanded all documents related to the Fish assault specifically.

At the August 2, 2005 Rule 30(b)(6) deposition of the FBI, spokesperson James Rice admitted that he personally was the direct supervisor of John Lourk in connection with the IMF/WB protests on April 17, 2000. As the Magistrate correctly found Louryk was assigned full time to the FBI's Washington Joint Terrorism Task Force and received his orders from James Rice. <u>See</u> Corrected Report and Recommendation at 5, ¶18. Rice is also the person who certified the accuracy of the FBI denials of any FBI involvement with the Fish assault.

In the subsequent ninety days after this unexpected disclosure in August 2005, Fish continued with diligence, conducted public records searches, determined Louryk to have a residence in Maryland and engaged a process server who made multiple unsuccessful attempts at personal service of process upon Louryk.

On November 4, 2005, Fish filed FTCA claims with the federal government identifying Louryk as Fish's assailant and providing detailed supporting records. The Federal Government

4

did not even bother to respond. After the expiration of the requisite six month waiting period, on July 20, 2006, Fish filed the instant complaint.

The defendants moved to dismiss or, in the alternate, for summary judgment on the basis that the FTCA filing and instant lawsuit was untimely and far outside of the two year limitation period for FTCA presentments. The defendants also contended that the filing of the November 4, 2005 FTCA presentment was barred by the fact that on or about April 12, 2002 - - with the expiration of the standard two year FTCA presentment period then imminent - - the Alliance plaintiffs filed a "catch-all" FTCA presentment to all federal agencies believed to be involved in the April, 2000 protests in which the plaintiffs requested that any federal agencies responsible for such claims or damages please identify themselves and accept financial responsibility for any injuries they caused. The Alliance plaintiffs attached a copy of the Alliance complaint.

Explicitly because in 2002 the plaintiffs did not possess knowledge and could not identify the specific federal involvement in the violations which they suffered, the Federal Government responded that it was "unable to process" any such claims asserted under the FTCA. See Ex. 2 to Defs' Mot to Dismiss at 3.

The Federal Government at that time observed that "The FTCA presentment and its attachments, however, provide **absolutely no information** that any Federal agency or Federal employee acted improperly or that any actions they may have taken caused any personal injury or property loss or damage to any named claimants. Indeed, . . . the FTCA presentment provided no such information. . ." Id. at 2 (boldface added).

That was because the plaintiffs did not possess - - despite diligent efforts - - such specific information establishing a federal causation. The point of the FTCA notice was to provide notice of violations and to afford federal agencies the opportunity to accept responsibility and to move

5

towards settlement of any such claims. The agencies did not respond in any affirmative manner and, in fact, rejected all claims as unprocessed specifically because the plaintiffs lacked information about Federal Government causation.

When, in August 2005, Robert Fish did come into knowledge of Federal Government causation of his injuries he continued to proceed with diligence and to file a FTCA claim providing specific details as a precursor and prerequisite to the instant complaint.[2]

In Fish's opposition to the defendants' dispositive motion, the Magistrate declined to consider Fish's legal argument that his FTCA presentment and subsequent complaint were timely under two independent legal principles.

The Magistrate did not address in the Report and Recommendation any of the cases cited by Fish establishing that Fish's complaint (for limitations computation purposes) accrued upon discovery that his assailant was an agent of the FBI. See Pls' Opp to Defs' Mot to Dismiss, or for Summary Judgment, and Related Rule 56(f) Motion at 8 – 18; Skwira v. U.S., 344 F.3d 64, 77 – 78 (1st Cir. 2003) ("the proper subject of knowledge for accrual purposes under the FTCA is (1) the fact of injury and (2) the injury's causal connection *with the government*") (emphasis added); Garza v. U.S. Bureau of Prisons, 284 F.3d 930, 934 (8th Cir. 2002) (requires reason to believe claimant has been injured by act or omission *of the government*); Diaz v. United States, 165 F.3d 1337, 1340 (11th Cir. 1999) (accrual of wrongful death FTCA claim occurs "when the plaintiff knows, or exercising reasonable diligence should know, both of the decedent's death and *its*

---

[2] The consequence of the Report and Recommendation, if adopted, would leave civil rights victims in Fish's circumstances in a Catch-22 situation. By the reasoning of the Report and Recommendation, Fish lost the right to file a civil complaint against the United States for his assault because he did not file a civil complaint against the United States within a period of time during which he had no evidence of Federal Government causation. He had no particular reason to believe that his assailant was a federal actor or deputy. However, had Fish filed a complaint against the United States for his assault during this period it would be dismissed out of hand because Fish could not allege involvement or causation by a federal actor or deputy. What Fish did is what was appropriate. He filed in this Court when promptly and timely upon discovery and disclosure that his assailant was a federal deputy. At all times he was diligent in the pursuit and exercise of his rights. The right to sue the United States for damages arising from the assault simply did not accrue until discovery that the assailant was a federal deputy.

*causal connection with the government*"); Drazan v. United States, 762 F.2d 56, 60 (7th Cir. 1985) (plaintiff may be afforded benefit of diligent discovery accrual standard where she lacked reason to believe she had been injured by an act or omission of the government).

The diligent discovery accrual standard is distinct from and does <u>not</u> require proof of deliberate concealment to be applicable. The Magistrate made no findings regarding the diligence, or any purported lack of diligence, on the part of Fish to determine the identity of his assailant. The record evidence is compelling that Fish was nothing less than extraordinarily diligent over a period of years in pursuit of this information. The record evidence is clearly sufficient that a reasonable juror could find that Fish was diligent and that despite his diligence lacked knowledge that his assailant was an FBI deputy and agent until the FBI suddenly disclosed such information in August, 2005 - - having sworn under oath repeatedly that there was no federal connection with the assault.

If one assumes (despite information to the contrary) good faith on the part of the FBI to thoroughly review its collective knowledge and disclose federal involvement or causation of the assault upon Fish, then it is deeply implausible to suggest that Fish - - outside the closed doors of the FBI - - could possibly have had known that his assailant was an FBI agent or deputy. Under the diligent discovery accrual standard, there is no way to reasonably suggest that Fish could have known that his assailant was a FBI deputy when the FBI claimed to not have known itself of the federal causation of the injury to Fish. The FBI disclaims any knowledge of federal causation despite representations that it reviewed its knowledge in response to discovery demands and despite the fact that the FBI is uniquely positioned (unlike Robert Fish) to access the agents and deputies and knowledge of the FBI.

However, the Magistrate does not address the diligent discovery accrual standard in its report and recommendation. This constitutes clear legal error. The evidence is compelling that this standard is met and it is amply clear that a reasonable juror could so find.

Nor does the Magistrate address the second and independent basis identified by Fish that would defeat the government's motion and authorize the complaint to proceed to discovery, including pursuant to Fish's Rule 56(f) Motion which is also not explicitly addressed in the Report and Recommendation.

The Report and Recommendation does not address any of the cases cited by plaintiff establishing that equitable tolling of the limitations period should apply because there was deliberate concealment. See Pls' Opp to Defs' Mot to Dismiss or for Summary Judgment and Related Rule 56(f) Motion at 9; Fitzgerald v. Seamans, 553 F.2d 220, 228 (D.C. Cir. 1977) ("Read into every federal statute of limitations . . . is the equitable doctrine that in case of defendant's fraud or *deliberate concealment of material facts* relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit.") (emphasis added); See also Barrett v. United States, 689 F.2d 324 (2nd Cir. 1982) (applying Fitzgerald v. Seamans to allow FTCA claim alleged to have accrued *over two decades after the alleged injury*).

Fish clearly alleges in his complaint deliberate concealment.[3]

---

[3] "    18. In the course of discovery in the Alliance case, the Federal Bureau of Investigation's official representative, James Rice III, represented under oath on behalf of the FBI that no FBI personnel had engaged in use of force against protestors in connection with the relevant protests.
    19. The FBI deliberately concealed information giving rise to this claim, including the involvement of its deputy in the besating.
    20. The FBI affirmatively and willfully mislead plaintiff Robert Fish to avoid discovery of Louryk's identity and his position with the WJTTF.
    21. In the Alliance case, the close-up photograph of the then-unidentified assailant as he struck plaintiff Robert Fish with the baton was produced in discovery to law enforcement, including the FBI.

Fish alleges that Louryk himself concealed the material fact of his law enforcement association when he refused to respond to Fish's repeated question, 'Are you a police officer?" at the time of the assault. Nor is this contraverted. There is no submitted affidavit from Louryk, even though the FBI concedes that it and its counsel have long been in contact with Louryk about this assault.[4]

Fish alleges that the FBI willfully concealed the involvement of its deputy Louryk in the assault upon Fish. See Complaint at 4 – 5.

On October 1, 2007, Magistrate Judge Facciola held a hearing in which the Court focused most predominantly on the allegation, which supports plaintiff's inference of concealment, that counsel for the FBI knew and did not disclose information about the identity of and the status of Louryk as an FBI deputy. The relevant representations and exchange can be found at pages 8 through 34 of the 34 page hearing transcript. See Exhibit 1.

The deputatation documents were produced by the U.S. Attorneys Office on August 1, 2005 to the Alliance plaintiffs. Fish contends there are circumstances which suggest that, in fact,

---

22. Neither Mr. Rice nor the FBI had *ever* advised that the then-unidentified assailant was a federal deputy assigned to the Washington Joint Terrorism Task Force and, in fact, affirmatively represented under oath that no FBI personnel had used such force.

23. In August, 2005, three and a half years after initial discovery was propounded and just before the deposition of an FBI agent who apparently knew of these circumstances, the FBI unexpectedly produced documentation establishing the identity of the individual who beat plaintiff Robert Fish to be John B. Louryk.

24. John B. Louryk was, in fact, assigned as a direct report to James Rice, III, the FBI affiant and representative / spokesperson who certified under oath that no use of force had been perpetrated by FBI personnel. James Rice was the direct supervisor of Louryk for the events in question."

Plaintiff's Complaint at 4 – 5.

[4]   In the August, 2005 Rice deposition, the FBI refused to produce the telephone number for Louryk, even though James Rice admitted to having "easy access to that information." See Pls' Opp to Defs' Mot to Dismiss or For Summary Judgment and Related Rule 56(f) Motion at 7, citing, Rice Dep. at 70:14 – 71:3. The FBI refused to produce any contact information for Louryk even though Rice conceded that such information was "easily accessible." Id. at 8, citing, Rice Dep. at 72:21 – 73:18. The FBI admitted that the Joint Terrorism Task Force had used that information to contact Louryk about a personal matter that very same month. Id., citing, Rice Dep. at 51:1 – 52:14. Incredibly, Rice testified that he *and the FBI's attorneys* had spoken with Louryk the day preceding the Rice deposition about this matter, but that any such information was isolated within counsel's knowledge. Id., citing Rice Dep. at 73:20 – 22, 50:9 – 13.

FBI and its counsel knew and did not disclose in advance of this date the identity of Louryk as the assailant and the fact that he was a federal deputy acting at the direction of and under the direct supervision of James Rice, himself. Fish contends that prior to August 1, 2005, the FBI objected to a particular third party subpoena to WMATA that if satisfied would have revealed Louryk's role in the assault and his status as a federal deputy assigned to the FBI and under the direction of James Rice. Notably, the MPD did not object to the subpoena - - even though as far as Fish was aware his assailant had no federal law enforcement connection and appeared to be connected to the MPD.[5]

At the October 1, 2007 hearing, in response to allegations of prior knowledge and concealment, AUSA Peter Smith represented repeatedly that it was on August 1, 2007 that the deputation papers first came to his and the FBI's attention. This, according to Smith, disproves any allegation of prior knowledge and concealment.

According to Smith in his representations to the Court during his August 1, 2005 witness preparation of James Rice for deposition, Smith showed Rice a photograph in which Rice recognized Louryk. Smith represented that Rice's recognition of Louryk was <u>not</u> connected to the Fish assault, but related to the closure of the Convergence Center. According to Smith's representations to the Court, he or his office immediately discovered or procured the deputation papers and immediately provided those to plaintiffs on the very same day of discovery.

---

[5]     Plaintiff's counsel, Carl Messineo, represented to the Court that an inference of concealment is evidenced by the fact that - - even though counsel for the FBI claims that he did not know of Louryk's connection to the FBI until the August 1, 2005 preparation for the Rice deposition - - on July 8, 2005 the FBI made an unusual objection to service of a subpoena on a third party, WMATA, believed by plaintiffs to possess information about the assailant's identity. The objection was viewed as highly unusual in that it did not come from the MPD, which plaintiff understood would have an interest with respect the then-unidentified assailant believed to be connected to the MPD, but it came *from the FBI* which disclaimed any connection to the Fish assault or knowledge of FBI involvement in the assault. It was unusual that just as plaintiff was about to secure from a third party the information, which ultimately would establish the FBI connection to the Fish assault as well as the identity of the assailant, the FBI suddenly intervened with legal objections and efforts to prevent such disclosure. <u>See</u> Exhibit 1, October 1, 2007 hearing transcript at 27 – 28.

Smith is very clear in his representations to the Court, which were in response to Fish's claims of concealment:

> "[D]uring witness preparation [on August 1, 2005], Supervisory Special Agent Rice recognized Detective Lorick. It was unconnected to any claim of an assault or alleged abuse of anyone by the FBI. It was in connection with the Convergence Center claim. And when that came to light, we immediately went out and got this information and provided it to Plaintiff."
> Exhibit 1, October 1, 2007 hearing transcript at 25.

Magistrate Judge Facciola understood this to be the sworn representation of Mr. Smith and challenged plaintiffs as to why that was not sufficient to eliminate any suggestion of concealment.

> MAGISTRATE JUDGE FACCIOLA:  Well, as I understand the situation, and I believe Mr. Smith has represented under oath that the following events occurred. That there came a time when, if I remember correctly, he had the photograph [of Fish's assailant], he showed it to supervising agent [Rice]. [Rice] saw it and said, "Oh, that's Lorick." And at that point they went into a file cabinet and found that five years earlier, Lorick, who worked for metro as a cop, had been specially deputated. . . . When Mr. Smith found that out, he then made you [Mr. Messineo, plaintiff's counsel] aware of it.
>
> Is that not what happened? It's what Mr. Smith has said.
>
> MR. MESSINEO: Our position is that - -
>
> MAGISTRATE JUDGE FACCIOLA: Well, I don't care about your position. Is Mr. Smith not telling me the truth? . . .

Exhibit 1, October 1, 2007 hearing transcript at 10.

Magistrate Judge Facciola asked Mr. Smith to confim this claimed chain of events, which he did.

> MAGISTRATE JUDGE FACCIOLA: I hope I didn't misrepresent what you said _____, did I?
>
> MR. SMITH: No, I don't think so.

>    MAGISTRATE JUDGE FACCIOLA: Well, please help us. Who was where? Was my recollection of that facts that you showed a photograph to Agent Rice, Rice says that's Lorick, then you go and you find in a file cabinet that Loryck has been deputized as a U.S. Marshal and that there is a memorandum of agreement pertaining to his participation and the subsequent tort liability [under the FTCA]. Am I right?
>
>    MR. SMITH: That's - - it's close. and I would refer the Court to the papers, specifically to - -
>
>    MAGISTRATE JUDGE FACCIOLA: Why don't you - - you got the papers? . . .
>
>    MR. SMITH: I read from Footnote 9 in the Government's reply, it's on page 11. "During the discovery period in the Alliance case, the alliance Plaintiffs, through counsel, had shown a series of photographs and video images of a person Fish now claims to be Detective Lorick to various MPD witnesses. During witness preparation for the FBI 30 (b)(6) deposition in the Alliance case, the undersigned counsel of record showed the same photographs and video to the FBI's 30(b)(6) witness and explained Fish's argument to the FBI. When the FBI's 30(b)(6) witness was able to identify Detective Lorick from some of the photographs or the video images but as explained the FBI did not identify Detective Lorick in the image of the alleged assault. FBI asked the U.S. Marshal Service for a copy of Detective Lorick's deputation form, which was then provided to the Alliance Plaintiffs. . . .

Exhibit 1, October 1, 2007 hearing transcript at 12 – 14.

As reflected in the transcripts, these representations satisfied the Court that there was no advance knowledge of Louryk's involvement in the assault or his deputation status. However, in the very final seconds of the hearing, Smith hedged and indicated that "I'm not sure, standing here today, exactly when I received those forms." Judge Facciola directed Smith to submit a brief declaration as to "whether or not, when you opposed the subpoena . . . you were aware and had seen the deputization papers that you have shown me." Exhibit 1, October 1, 2007 hearing transcript at 33.

In the subsequent five weeks, no such declaration was filed.

On November 14, 2007, Smith filed a declaration (docket entry no. 25-2) in which he admitted that at the time of his objection to the WMATA subpoena, and prior to the August 1, 2005, deposition preparation of James Rice, that he did in fact know of the deputation of Louryk

12

and had in fact received the deputation papers from elsewhere unconnected to the deposition preparation of James Rice. See Declaration of Peter S. Smith at 2, ¶2.

On the immediately following day, November 15, 2007, Mr. Smith was withdrawn as counsel in this case. (Docket no. 26).

In the August 2, 2005 Rule 30(b)(6) deposition of the FBI, Rice swore that it was Smith who brought the deputation papers to his attention, and that the FBI had no explanation as to why they were deemed of relevance to be suddenly produced to plaintiffs on August 1, 2005. According to Rice as the FBI spokesperson, the U.S. Attorney's Office at that time advised him that Louryk was a party to a lawsuit for alleged actions in connection with the April 2000 IMF/WB protests. Rice Dep. at 31:10 – 14, cited in, Pls' Opp to Defs' Mot to Dismiss or For Summary Judgment and Related Rule 56(f) Motion at 6. Contrary to the representations or implications of Mr. Smith, the context clearly pertained to the Fish assault.

The Report and Recommendation is objected to because there is no treatment whatsoever of the deliberate concealment argument. This omission constitutes legal error.

Nor is there any reference to the substantial portion of the October 1, 2007 hearing and the inaccuracy of the repeated representations of the FBI through its counsel as to the related chain of events.

Plaintiff Fish has, in good faith, made proper and sufficient allegations of deliberate concealment as relate to the equitable tolling issue such that dismissal on a motion to dismiss without any development through discovery constitutes error. Fish has produced sufficient evidence and information to survive a motion to dismiss even without benefit of discovery and under circumstances in which virtually all relevant information about Federal Government knowledge and disclosure and concealment is uniquely within the possession of the defendant.

The response of the defendant, factually, with respect to the issue of concealment and the timing of knowledge is contradictory at best and does not undermine (and in fact underscores) the inappropriateness of summary disposition.

Consequently, plaintiff objects to the implicit denial of plaintiff's Rule 56(f) motion seeking discovery on this material issue.

In light of the objections set forth herein, the plaintiff respectfully requests that the Court undertake *de novo* review of the matters encompassed by the objections Corrected Report and Recommendation.

                                                      Respectfully submitted,

January 4, 2007                              /s/  Carl Messineo
                                                      Carl Messineo (#450033)
                                                      PARTNERSHIP FOR CIVIL JUSTICE
                                                      617 Florida Ave., NW
                                                      Washington, D.C. 20001
                                                      (202) 232-1180