UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                               :
In the Matter of:           :
                               :
ROBERT FISH,                :
                               :
    Plaintiff,           :
                               :
    vs.                  :     Civil Action No. 06-1281
                               :
UNITED STATES OF AMERICA,   :
  et al.,                 :
                               :
      Defendants.        :
                               :     Washington, D.C.
- - - - - - - - - - - - - - x   October 1, 2007

TRANSCRIPT OF SHOW CAUSE HEARING
BEFORE THE HONORABLE JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:     CARL L. MESSINEO, ESQ.

For the Defendant:     PETER S. SMITH, ESQ.
                           Assistant United States Attorney

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M2055V/bf

1          **P R O C E E D I N G S**

2               THE CLERK:  This is Civil Case 06-1281, Robert

3    Fish versus United States of America, et al.  Carl L.

4    Messineo for the Plaintiff; Peter S. Smith for the United

5    States.  This is a show cause hearing.

6               THE MAGISTRATE JUDGE:  Sir.  You have the floor.

7               MR. MESSINEO:  Your Honor, our position is fairly

8    short and straightforward, which is that at the time of the

9    filing of the Alliance for Global Justice complaint, which

10   was of course a large complaint consisting of many

11   organizations and persons against many other Defendants,

12   Mr. Fish had absolutely no specific information at all that

13   it was the FBI or an FBI personnel or agent who had

14   consulted him and, in fact, I mean --

15              THE MAGISTRATE JUDGE:  Okay.  Conceding that,

16   could you please look at Footnote number 1 in your

17   opposition to Defendant's motion to dismiss or for summary

18   judgment, filed -- it's Document 16 in Robert Fish versus

19   the United States, 06-1281.  Document number 16 on the

20   docket, filed on February 20th of this year.

21              MR. MESSINEO:  I'm sorry.  I didn't hear which

22   footnote, or I heard it but --

23              THE MAGISTRATE JUDGE:  Footnote number 1, page 2.

24              MR. MESSINEO:  Page 2.

25              THE MAGISTRATE JUDGE:  And I read, quote, "There

1   have been no FTCA claims advanced by the Alliance Plaintiffs

2   or by Robert Fish against the Federal Defendants.  There are

3   no such claims for relief in the prayer for relief.  That

4   the Alliance complaint does not encompass claims against the

5   federal government has been stated and represented

6   repeatedly before the Court."

7           However, as I point out in the order to show

8   cause, you filed a administrative tort complaint with the

9   United States in 2001, in which you, a, allege that certain

10  federal agencies had conspired with the Metropolitan Police

11  Department to disrupt lawful political activities during

12  demonstrations, and that complaint contained a specific

13  description of the incident involving Mr. Fish, quotes,

14  "On April 17, 2000, Plaintiff Rob Fish, quotes, comma,

15  'who was taking photographs of police brutality, comma,

16  was beaten over the head with a baton by an unidentified

17  undercover agent -- undercover agent -- was able to take a

18  photo of the agent swinging the baton towards his head.

19  After the camera dropped to the ground during the beating,

20  an officer stomped on the camera.  That damage to the camera

21  destroyed some photos, but the photo of the undercover agent

22  was salvaged.  In the section of the complaint where the

23  Defendants are identified, quotes, 'The Defendant, United

24  States of America,' end of quotes, was described as, quotes,

25  'encompassing all federal law enforcement or other officials

1   and agencies that had any _____ in the violation
2   alleged herein.'"

3          How can that be true and Footnote 1 be true at
4   the same time?

5          MR. MESSINEO:  Well, Your Honor, let me address
6   both of those things separately with respect to Footnote 1.

7          I believe that it is intended, and I thought it
8   was quite clear that with respect to Footnote 1 and in the
9   context of this, we are talking about claims filed in civil
10  court.  I mean, there has been no FTCA claims filed in civil
11  court by Robert Fish against the federal government.  In the
12  Alliance complaint.  And I don't know if that was --

13         THE MAGISTRATE JUDGE:  All right.  All right.
14  Okay, that's fine.

15         MR. MESSINEO:  Okay.

16         THE MAGISTRATE JUDGE:  But he did file an
17  administrative tort claim in 2001, on the theory that thanks
18  to the conspiracy with the federal agencies, with the
19  Metropolitan Police Department, many things happened, one
20  of them his being beaten.  At that point, in 2001, shouldn't
21  he have filed the FTC action, rather than wait until 2006?

22         MR. MESSINEO:  Actually not, Your Honor.  We did
23  send the FTCA claim over, and the claim consisted, in fact,
24  of the entirety of the Alliance for Global Justice
25  complaint.  It wasn't a singular claim on behalf of

1    Mr. Fish.  We actually -- the claim was this is the

2    complaint, here it is.

3         THE MAGISTRATE JUDGE:  Unquestionably.  So you

4    attached to the administrative tort claim you filed, your

5    complaint.  And as I point out, the complaint contained a

6    description of the beating of Fish.

7         MR. MESSINEO:  And that complaint was rejected as

8    unprocessed by the Federal Defendants precisely because the

9    Plaintiffs, including Mr. Fish, had no specific information

10   to associate the Federal Defendants with any of the events

11   that are described therein.

12        THE MAGISTRATE JUDGE:  Well, that constituted,

13   quotes -- whatever you were told in 2001, would it not

14   constitute a, quote, "notice of final denial of the claim

15   by the Agency to which it was presented under the Torts

16   Claims Act, specifically 28 U.S.C., Section 1241(b)"?

17        MR. MESSINEO:  It constituted a rejection of the

18   application.  I mean, it didn't even --

19        THE MAGISTRATE JUDGE:  And therefore a denial.

20   Why couldn't Fish file suit in 2001?  What stopped him from

21   doing so?

22        MR. MESSINEO:  Absolutely, because there was no --

23        THE MAGISTRATE JUDGE:  Absolutely he couldn't?

24   Or absolutely could?

25        MR. MESSINEO:  He could not have.  Because he did

1   not have the specific linkage to the FBI.  To file suit at
2   that point against, for example -- well, the FBI, when there
3   was no affirmative indication and no affirmative evidence
4   that it was in fact an FBI agent that perpetrated the
5   assault and where the evidence, which consists of the fact
6   that the assaulter was in joint action with a uniformed
7   Metropolitan Police Department officer and was identified
8   as a police officer, there was no affirmative basis on which
9   to say, "This individual is an FBI agent; therefore, the FBI
10  should be responsible."

11          THE MAGISTRATE JUDGE:  So the denial of the claim
12  was of no significance for Fish?  Why couldn't Fish have
13  filed his claim in 2001, commenced discovery, and
14  ascertained who hit him?

15          MR. MESSINEO:  The denial of the claim, along with
16  the representations of the FBI, which happened to have, of
17  course, been a party to the Alliance lawsuit, were all very
18  consistent.  The denial of the claim was not on its merits,
19  which was absolutely consistent with the fact that the FBI
20  was very clear that its responsibilities did not involve
21  persons on the ground in such a situation where they would
22  be able to or where they did perpetrate use of force.

23          THE MAGISTRATE JUDGE:  But you charged conspiracy.
24  You said it was by virtue of a conspiracy with the
25  Metropolitan Police Department.  It would then follow that

1  if the person who beat Fish was employed by the Metropolitan

2  Police Department, the theory of the claim was that was the

3  product of a conspiracy.  And in which case, it wouldn't

4  matter who employed the person who beat him.

5       MR. MESSINEO:  And herein, perhaps, is one of the

6  problems with larger complaints encompassing many incidents.

7  I don't think that there was any information suggesting a

8  specific conspiracy that involved Robert Fish and committing

9  an assault on Robert Fish.  Unquestionably, what is pled in

10 there -- and a number of the Plaintiffs at that time in the

11 pleading are organizational plaintiffs who, of course, had

12 standing to seek declaratory injunctive relief against an

13 ongoing pattern of disruption of mass protests, but there

14 was no intention to say that we know or believe or assert

15 that there was a conspiracy between the MPD, who ultimately

16 wasn't involved, they say, and the FBI.  There's simply no

17 indication that the FBI had anything to do with the assault.

18 I mean, none.

19       THE MAGISTRATE JUDGE:  The complaint identifies

20 the Defendant as follows, Defendant, United States of

21 America, quotes, described as, quotes, "encompassing all

22 federal law enforcement or other officials and agencies

23 that have any role in the violations alleged herein."

24 A complaint filed in 2001 under the Federal Torts Act could

25 have charged the United States of conspiring with the

1   Metropolitan Police Department and as a result therefore,
2   Mr. Fish was beaten.  Right?
3           MR. MESSINEO:  Well, I don't think that there was
4   any specific conspiracy to beat Mr. Fish.  I mean, I believe
5   that the gist of the complaint is that there was in fact a
6   conspiracy and joint action to disrupt the mass protests and
7   that the organizational plaintiffs were well positioned to
8   seek, you know, related relief.
9           But with respect to Mr. Fish.  I mean, he was out
10  on the street.  There is no suggestion of premeditation, and
11  I don't think that that's indicated anywhere.
12          THE MAGISTRATE JUDGE:  Well -- okay.  Let's look
13  at another issue.
14          When did Mr. Fish's claim accrue?
15          MR. MESSINEO:  In, was it -- it was in 2005, when
16  we received it.
17          THE MAGISTRATE JUDGE:  It didn't occur when he
18  was beaten.
19          MR. MESSINEO:  Pardon me?
20          THE MAGISTRATE JUDGE:  It didn't occur when he was
21  beaten.
22          MR. MESSINEO:  No.  The injury was --
23          THE MAGISTRATE JUDGE:  So it occurred, and the
24  statute was then tolled for five years until he ascertained
25  who beat him.  Is that right?

1          MR. MESSINEO:  Under the circumstances where the

2     person who beat him was an unidentified federal agent, and

3     where Mr. Fish was diligent in exercising all efforts to

4     identify who the perpetrator was who assaulted him.  And

5     where the federal agent chose not to identify himself even

6     though engaging in overt law enforcement activity that

7     included use of force, and even though the FBI who, by

8     virtue of their involvement in the Alliance case was

9     explicit, time and time again, the FBI didn't have an agent

10    that used force.  They don't use force, they said.

11         THE MAGISTRATE JUDGE:  In the Alliance case, can

12    you explain to me any reason why Mr. Fish cannot testify

13    that he was beaten and have recovery on that basis against

14    those defendants?

15         MR. MESSINEO:  Against the FBI.  The FBI --

16         THE MAGISTRATE JUDGE:  Well, the FBI -- I thought

17    the federal agencies were no longer a party to all this.

18         MR. MESSINEO:  That's correct.  The primary actor

19    here is a federal agent, as is, you know, disclosed in

20    August of 2005, when, out of the blue after five years of

21    saying, "Our agents were not involved in use of force, our

22    agents were not involved in crowd control, absolutely not,"

23    then all of a sudden, out of the blue, they send over

24    deputation papers saying that the agent, in particular --

25    only one agent they sent over, so they knew who they were

1    talking about.  We don't have all the deputation papers.
2    They sent over the deputation papers for Lorick, just before
3    James Royce was to be deposed after years of denials.

4        THE MAGISTRATE JUDGE:  Well, as I understand the
5    situation, and I believe Mr. Smith has represented under
6    oath that the following events occurred.  That there came a
7    time when, if I remember correctly, he had the photograph,
8    he showed it to supervising agent Reed.  Reed saw it and
9    said, "Oh, that's Lorick."  And at that point they went into
10   a file cabinet and found that five years earlier Lorick,
11   who worked for Metro as a cop, had been specially deputated
12   pursuant to a memorandum of understanding that for the
13   purposes of tort liability that day he would be deemed to be
14   a deputy United States marshal.  When Mr. Smith found that
15   out, he then made you aware of it.

16       Is that not what happened?  It's what Mr. Smith
17   has said.

18       MR. MESSINEO:  Our position is that --

19       THE MAGISTRATE JUDGE:  Well, I don't care about
20   your position.  Is Mr. Smith not telling me the truth?

21       MR. MESSINEO:  I'm not saying anything about
22   Mr. Smith.  But the FBI spokesperson, the FBI spokesperson -

23       THE MAGISTRATE JUDGE:  Who was Reed.

24       MR. MESSINEO:  No.

25       THE MAGISTRATE JUDGE:  Well, I thought Reed was

1    the 30(b)(6) deponent.

2            MR. MESSINEO:  Rice.  Rice, I'm sorry.

3            THE MAGISTRATE JUDGE:  Rice, excuse me.

4            MR. MESSINEO:  My apologies.  It was Rice.  Rice,

5    who was the 30(b)(6) spokesperson for all of this and who

6    signed all of these statements, you know, saying that,

7    "Our agents did not do that.  Our agents specifically were

8    not involved in any of those things in that complaint."

9            THE MAGISTRATE JUDGE:  But you and I agree that

10   Lorick was not an FBI agent.

11           MR. MESSINEO:  Well, he's FBI personnel.

12           THE MAGISTRATE JUDGE:  No, he isn't.  He's a

13   deputy United States marshal.  That's different.

14           MR. MESSINEO:  And the memorandum of understanding

15   clearly, clearly places him as a full-time FBI agent,

16   working at the direction and control of Mr. Rice.

17           THE MAGISTRATE JUDGE:  I'm sorry, correct me, but

18   I thought the papers that Mr. Smith, to which Mr. Smith

19   brought my attention, show the deputization of Mr. --

20   of Lorick as a deputy United States marshal.

21           MR. MESSINEO:  That's correct, and there was also

22   an accompanying memorandum of agreement which places him

23   full-time under the control and direction of the FBI.

24           THE MAGISTRATE JUDGE:  I thought it only was a

25   memorandum of understanding with reference to his tort

1    liability that day.

2        MR. MESSINEO:  Not that day in particular, no,

3    Your Honor.

4        THE MAGISTRATE JUDGE:  All right.  Well, I'm going

5    to ask Mr. Smith.

6        MR. MESSINEO:  No, no.  It definitely was -- I

7    mean, that was his ongoing -- this was not -- just to be

8    clear.  This was not -- in terms of the deputation or the

9    memorandum of agreement, not particular to this day.

10        THE MAGISTRATE JUDGE:  I understand.  All right.

11   Now I'm going to ask Mr. Smith some questions.  Mr. Smith?

12   Please.

13        I hope I didn't misrepresent what you said

14   _____, did I?

15        MR. SMITH:  No, I don't think so.

16        THE MAGISTRATE JUDGE:  Well, please help us.

17   Who was where?  Was my recollection of the facts that you

18   showed a photograph to Agent Rice, Rice says that's Lorick,

19   then you go and you find in a file cabinet that Lorick has

20   been deputized as a U.S. marshal and that there is a

21   memorandum of agreement pertaining to his participation and

22   the subsequent tort liability.  Am I right?

23        MR. SMITH:  That's -- it's close.  And I would

24   refer the Court to the papers, specifically to --

25        THE MAGISTRATE JUDGE:  Why don't you -- you got

1  the papers?

2       MR. SMITH:   This is Footnote 9 in the Government's

3  reply.

4       THE MAGISTRATE JUDGE:   And you actually affixed

5  the papers themselves, I remember seeing them.

6       MR. SMITH:   That's correct.

7       THE MAGISTRATE JUDGE:   That's what I was talking

8  about.   Do you have the papers?

9       MR. SMITH:   I do.

10       THE MAGISTRATE JUDGE:   Go ahead.   I didn't mean to

11  interrupt you.   Read Footnote 9, Mr. Smith.

12       MR. SMITH:   During the discovery period in the

13  Alliance case --

14       THE MAGISTRATE JUDGE:   For the record, sir,

15  "I read," okay?   So the reporter will know.

16       MR. SMITH:   I read from Footnote 9 in the

17  Government's reply, it's on page 11.   "During the discovery

18  period in the Alliance case, the Alliance Plaintiffs,

19  through counsel, had shown a series of photographs and video

20  images of a person who Fish now claims to be Detective

21  Lorick to various MPD witnesses.   During witness preparation

22  for the FBI 30(b)(6) deposition in the Alliance case, the

23  undersigned counsel of record showed the same photographs

24  and video to the FBI's 30(b)(6) witness and explained Fish's

25  argument to the FBI.   When the FBI's 30(b)(6) witness was

1  able to identify Detective Lorick from some of the
2  photographs or the video images but as explained the FBI did
3  not identify Detective Lorick in the image of the alleged
4  assault.  FBI asked the U.S. Marshal Service for a copy of
5  Detective Lorick's deputation form, which was then provided
6  to the Alliance Plaintiffs.  FBI also provided the Alliance
7  Plaintiffs with the memorandum of understanding that is part
8  of Plaintiff's Exhibit 2.  FBI provided these materials so
9  that given their arguments, the Alliance Plaintiffs would
10 have those materials for use in the deposition of the FBI
11 in that case.  Neither of the records that are part of
12 Plaintiff's Exhibit 2 were responsive to the Alliance
13 Plaintiffs' discovery requests; for example, the MOU has to
14 do with FTCA liability, not with any use of force during the
15 April 2000 demonstrations.  Similarly, the deputation form
16 does not reflect any use of force or identify any
17 individuals having used force during the time period in
18 question.  Instead, the FBI went beyond its strict discovery
19 obligations and provided these records in an abundance of
20 caution and in light of the theory that Plaintiffs had been
21 developing in depositions of MPD witnesses."

22          THE MAGISTRATE JUDGE:  Now, let's go to 2.  Please
23 go to 2.

24          MR. SMITH:  To the second (inaudible) exhibit?
25          THE MAGISTRATE JUDGE:  To the actual memorandum of

1    understanding.  My recollection of it was that it pertained

2    to tort liability.  But I thought Lorick remained a deputy

3    United States -- special deputy United States marshal.

4    Is my recollection.  May I see it for a second?

5            MR. SMITH:  Sure.  I'm looking for the actual

6    form.  I think it's actually one of the Plaintiff's

7    exhibits.

8            I think that you may be right, Your Honor, that --

9    I've got both the MOU and the deputation form here.

10           THE MAGISTRATE JUDGE:  Can I see it?  It will

11   refresh my recollection as to what I was thinking of.

12           MR. SMITH:  This is the form.  This is the MOU.

13   And in the MOU, at the very end, is the section on tort

14   liability.

15           THE MAGISTRATE JUDGE:  Yes, this is what I was

16   remembering.  It's paragraph 15.  And it talks about how the

17   United States, pursuant to the Federal Torts Claim Act,

18   quotes, "may assume financial responsibility for any claims,

19   personnel or property damage."

20           So it was my recollection of this agreement that

21   Lorick was deputized as a special deputy -- I'm sorry, as a

22   deputy United States marshal.

23           MR. SMITH:  That's correct.

24           THE MAGISTRATE JUDGE:  Not as a deputy FBI agent,

25   if there was such a thing.  But the United States agreed to

1    undertake tort liability, or agreed if it wished -- if it

2    saw fit to do so, to assume financial responsibility for any

3    of the claims that would be made on the basis of any acts by

4    Lorick.  Is that right?

5              MR. SMITH:  That's correct.

6              THE MAGISTRATE JUDGE:  Well, you said not

7    completely.  What did I get wrong?

8              MR. SMITH:  Well, I just want to make it clear

9    that my understanding is that the Joint Terrorism Task Force

10   personnel do report to the FBI, and --

11             THE MAGISTRATE JUDGE:  I understand.

12             MR. SMITH:  Okay.

13             THE MAGISTRATE JUDGE:  Now, Mr. Smith, I know

14   you're in a complicated position because you're talking

15   about yourself, but in that footnote I referred to, it says,

16   quotes, "In retrospect, this reflects the _____

17   Defendants' knowledge at the time that Fish's assault was

18   an agent of the FBI, although such information remained

19   concealed from and unknown to Robert Fish till August 1st,

20   2005, as discussed herein."

21             Throughout these papers, as you are well aware,

22   you are accused of keeping from them something you knew,

23   that you did not want them to know, to wit, that Lorick was

24   a special deputy U.S. marshal.

25             MR. SMITH:  Yes, Your Honor.  I mean, I understand

1  that that's what Plaintiff is alleging.  The facts are

2  the following.

3        There is still, there remains no evidence that

4  Detective Lorick is the person in photograph.  The FBI's

5  30(b)(6) witness, James Rice, identified Detective Lorick

6  in other photos.

7        THE MAGISTRATE JUDGE:  Well, not that one.

8        MR. SMITH:  But not the one --

9        THE MAGISTRATE JUDGE:  Not the one by Fish.

10        MR. SMITH:  That's correct.  So the FBI still has

11  no evidence before it that Detective Lorick is involved,

12  and that's, in part, my response.

13        The FBI, when we responded to our discovery

14  requests, it remains the case the FBI did not receive any

15  use of force, there's no record or -- there's memorandum or

16  anything from any of its personnel or any of the JTTF

17  members about use of force on that weekend.  And that

18  remains the case.

19        It was also my understanding -- this is not, I

20  think, expressed in our papers, but as I explained in the

21  footnote, Footnote Number 9, we were responding to

22  Plaintiff's argument.  So I disagree with what Plaintiff is

23  saying, that we knew something and therefore provided a

24  deputation form.

25        THE MAGISTRATE JUDGE:  So what you are saying

1  today is, as you stand there, you still don't know if

2  that's Lorick.

3           MR. SMITH:  Yes.  And that's what we say in our

4  papers here, and that's correct.  And we've obviously --

5           THE MAGISTRATE JUDGE:  Well, they now think it's

6  Lorick, because they've sued him.

7           MR. SMITH:  They do.  And they also thought it

8  during the pendency of the Alliance case, which is why we

9  shared the 30(b)(6) deposition, the deponent's pictures.

10  As the Court has pointed out, the Alliance complaint makes

11  reference to Fish's beginning -- he seems to advance that

12  claim.  The Alliance Plaintiffs, including Mr. Messineo and

13  his co-counsel, did file an administrative tort claim form

14  that included the Fish incident.  So --

15           THE MAGISTRATE JUDGE:  What is the significance of

16  his doing that?

17           MR. SMITH:  Well, I think under McNeil, the --

18           THE MAGISTRATE JUDGE:  What's McNeil?

19           MR. SMITH:  McNeil is the Supreme Court case that

20  talks about the presentment requirements and states that

21  since the FTCA is jurisdictional, that the presentment and

22  the statute itself should be strictly construed.  And while

23  the Plaintiffs make this argument that -- or Plaintiff, in

24  this case, Mr. Fish, makes the argument that his own

25  presentment was somehow defective and didn't count, I don't

1   see any authority for that.  I don't believe Plaintiff

2   raised any, and I think that McNeil forecloses that

3   argument.  Once you make a presentment or at least attempt

4   to, the clock is running.  That's separate and apart from

5   the separate argument, which is the issue of the statute of

6   limitations.  That's another issue.

7           THE MAGISTRATE JUDGE:  Now, as of today -- and

8   this is crucial -- you specifically now deny that Lorick --

9   that when you showed the picture to Rice, you thought that

10  the person depicted beating Fish was Lorick.

11          MR. SMITH:  You mean personally?

12          THE MAGISTRATE JUDGE:  You.  Yes.

13          MR. SMITH:  I don't know.  I don't have factual

14  information about the ongoing events.  But I understood that

15  to be Plaintiff's --

16          THE MAGISTRATE JUDGE:  Why did you show Rice the

17  picture?

18          MR. SMITH:  Again, because, as was stated in the

19  footnote, the Plaintiffs had been shown a picture of each of

20  the witnesses in the Alliance case, and I don't know if --

21          THE MAGISTRATE JUDGE:  Oh, I see.  So they show

22  Lorick's witness -- this picture of what they allege is

23  Lorick to other people.

24          MR. SMITH:  Right.  And I'm not talking about --

25          THE MAGISTRATE JUDGE:  And you're at the

1    deposition watching this.

2            MR. SMITH:   Correct.   So --

3            THE MAGISTRATE JUDGE:   So then you take the

4    picture and show it to Rice.

5            MR. SMITH:   Exactly.   So it's sort of back --

6            THE MAGISTRATE JUDGE:   And does Rice say, "That's

7    Lorick"?

8            MR. SMITH:   No.

9            THE MAGISTRATE JUDGE:   What does Rice say?

10           MR. SMITH:   Let me be clear about this.   It's kind

11   of backwards, because it's information that I obtained

12   sitting through the depositions which I then gave to the

13   FBI.   But with respect to all these different photographs,

14   there are various photographs.   So there are some where

15   Special Agent Rice testified that was certainly Lorick, and

16   what --

17           THE MAGISTRATE JUDGE:   Where he said that.

18           MR. SMITH:   Yes.

19           THE MAGISTRATE JUDGE:   Rice said, "That's Lorick."

20           MR. SMITH:   Right, but not with respect to the

21   beating.   There are a variety of different claims in the

22   Alliance case, one involved the Convergence Center

23   _____ protesters, and plaintiffs in the case were

24   making preparations, were staying -- and a variety of

25   individuals came into the Convergence Center, and Detective

1 | Rice said -- excuse me, Special Agent Rice said that one of
2 | the people coming into the Convergence Center was or
3 | appeared to be Detective Lorick, but when he was shown the
4 | photograph of the alleged assault in the 30(b)(6) deposition
5 | in the Alliance case, he could not --
6 |       THE MAGISTRATE JUDGE:  I've seen that.
7 |       MR. SMITH:  Right.  He could not identify him.
8 | I think his words were something to the effect of, "It could
9 | be, we're not sure."  And again, the only reason that this
10 | came up was because from what I had learned through witness
11 | prep, I so informed the FBI.  We responded so that
12 | Plaintiffs would have every opportunity in the 30(b)(6)
13 | deposition to ask these questions and, again, as the
14 | footnote points out, the information that we conveyed to
15 | Plaintiffs wasn't even responsive to their discovery
16 | requests.  We went above and beyond that.
17 |       But it seemed to me proper to give them that
18 | material, given their claims -- given their allegations.
19 |       THE MAGISTRATE JUDGE:  All right.  Good.  I want
20 | you to stay there.  I'm going to take a two-minute recess.
21 | I'll be right back.
22 |       (Whereupon, a brief recess was taken.)
23 |       THE MAGISTRATE JUDGE:  One that -- one, there is
24 | the document that is filed in the administrative tort claim,
25 | and two, it is attached to what we now know to be the

1    complaint in Alliance.  The federal government -- the

2    agencies that this is filed with, which I take it are FBI,

3    Park Police -- any others?  Marshal Service?

4         MR. SMITH:  They're the eight federal Defendant

5    agencies in the Alliance case.

6         THE MAGISTRATE JUDGE:  Okay.  Do they collectively

7    make one answer to it, or do each of the agencies make a

8    different answer?

9         MR. SMITH:  No, the Park Service answered on

10   behalf of all the agencies, and that's clear in their

11   letter.

12        THE MAGISTRATE JUDGE:  And what did they say?

13        MR. SMITH:  They sent two letters.  This is my

14   recollection, and I've got the letters here, they're

15   exhibits to our underlying motion --

16        THE MAGISTRATE JUDGE:  Yes.

17        MR. SMITH:  -- and memorandum.  The first letter

18   said we need more information, all you did was attach a

19   complaint, what are you specifically complaining about.

20   And the second letter essentially denied the claim, and said

21   that it -- I'd have to look at it to see exactly what it

22   said, but --

23        THE MAGISTRATE JUDGE:  Please, take your time.

24        MR. SMITH:  I think this is the first letter,

25   it's Government Exhibit 2, and it says, "Because the FTCA

1    presentment is legally inadequate, we are unable to process

2    it until we receive the requesting information in support,"

3    and then they ask counsel for the Alliance Plaintiffs to

4    respond within a certain period of time.

5            And the second letter is Government Exhibit 3,

6    dated February 6, 2003.  It states, at the bottom of page 1,

7    "Your FTCA presentment contains absolutely no information to

8    support that either or any federal agency or its employees

9    acted improperly."

10           THE MAGISTRATE JUDGE:  Do you think it is a

11   denial?

12           MR. SMITH:  It certainly looks like that.  The

13   paragraph that -- the following paragraph, the end of that

14   paragraph, says "The 40-day deadline has long since expired

15   and your office has provided no information or documentation

16   pursuant to 28 C.F.R. 1429(b).  If you are dissatisfied with

17   this determination, you may submit a written request for

18   reconsideration.  You may also file suit in an appropriate

19   United States District Court not later than six months --"

20   they're giving the appeal rights that are part of the

21   statute to the District Court.

22           THE MAGISTRATE JUDGE:  I understand.  Now, if you

23   would, turn to page, for example, page 6 of their

24   document 16, Plaintiff's opposition to your motion to

25   dismiss.

1        MR. SMITH:  I'm sorry, Your Honor, can you say
2   that one more time?

3        THE MAGISTRATE JUDGE:  Sure.  Look at their
4   document, which is number 16, which is Plaintiff's
5   opposition to Defendant's motion to dismiss or for summary
6   judgment.

7        MR. SMITH:  Oh, I see what you're saying.  Yes.
8   Okay.  I've got that document.

9        THE MAGISTRATE JUDGE:  I want you to look at
10  page 6.

11        MR. SMITH:  Okay.

12        THE MAGISTRATE JUDGE:  The deputization document
13  we just looked at, and it says, quotes, "There's never been
14  any explanation provided for the wilful withholding and
15  concealment of these documents," end of quotes.

16        Come down a bit.  It says, again, quotes, "This is
17  self-evident since the Department of Justice or the FBI --"
18  that's you -- "or their counsel have withheld and concealed
19  information or _____ reflecting the identity of Fish's
20  assailant, despite obligations arising under the Federal
21  Rules of Civil Procedure for disclosure in response to
22  discovery requests," end of quotes.

23        Is that true?

24        MR. SMITH:  No.

25        THE MAGISTRATE JUDGE:  Tell me why.

1          MR. SMITH:  Well, first of all, as I said before,
2    with respect to Special Agent Rice's testimony, he wasn't
3    sure whether that was Lorick in the photo, even now.  I
4    mean, even at the time of his deposition.

5          Second of all, the Plaintiffs have been showing
6    this photograph, as I said, to, as far as I know, most if
7    not all of the MPD witnesses over a course of the discovery
8    -- deposition discovery in the Alliance case.  So it was
9    something that I incorporated into the witness preparation
10   for the 30(b)(6) deposition.  It was at that time that
11   Supervisory Special Agent Rice recognized Detective Lorick
12   in some, but not all, of the photographs, and we discussed
13   that.  He did not recognize him specifically in the alleged
14   assault photograph.  He did, I believe, recognize him from
15   other photographs, including people entering the Convergence
16   Center.  And I guess that was actually in the video, it
17   wasn't a photograph.

18         But anyway, during witness preparation,
19   Supervisory Special Agent Rice recognized Detective Lorick.
20   It was unconnected to any claim of an assault or alleged
21   abuse of anyone by the FBI.  It was in connection with the
22   Convergence Center claim.

23         And when that came to light, we immediately went
24   out and got this information and provided it to Plaintiff.
25         THE MAGISTRATE JUDGE:  All right.  Did you believe

1  or do you think there is any basis for the accusation made
2  against you that the document fell within a pre-existing
3  discovery demand and you did not comply with your discovery
4  obligations under the Federal Rules of Civil Procedure?
5         MR. SMITH:   I think that's incorrect.  And I don't
6  know if the Plaintiffs have identified the specific request,
7  but the requests, when I last looked at this, seemed to be
8  for the use of force.  They had to do with the use of force
9  by agency personnel.  And again, we still have no evidence
10  of any FBI use of force.  No FBI agent or anyone reporting
11  to the FBI submitted any sort of paperwork about any use of
12  force at all.
13         So not only was this unknown to us, but again,
14  I mean, that would support a good faith discovery response
15  that, you know, the FBI is not involved, which is what we
16  still maintain.  You know, as I said, during witness prep we
17  showed the photographs to the FBI.  The FBI wasn't able to
18  identify Detective Lorick as the alleged assaulter.  So I
19  think that our responses were proper and continue to be
20  proper.
21         I mean, the fact that, you know -- I guess it
22  boils down to this.  The fact that Plaintiff disagrees or
23  the fact that Plaintiff is unhappy doesn't make that true.
24  It doesn't make my conduct improper.  And the other thing is
25  that if this were really the allegation, then the proper

1   forum to raise this would be in the discovery period for the

2   Alliance case.  Supervisory Special Agent Rice was deposed,

3   as was Fish during the Alliance case, and nobody raised any

4   of this at that time.

5               THE MAGISTRATE JUDGE:  Thank you, sir.  Counsel?

6               MR. MESSINEO:  Let me note that in advance, some

7   number of months in advance of August, when we were, as

8   counsel in the Alliance case, seeking to subpoena, through

9   a third-party subpoena, Lorick, it was not the MPD who we

10  thought was the primary responsible party for him that

11  objected.  The MPD was actually silent.  It was the FBI

12  which objected to the subpoena, suggesting, quite frankly,

13  that they had an awareness that there was a federal

14  connection with this individual; otherwise --

15              THE MAGISTRATE JUDGE:  How does that follow?

16  How does that follow?  Why would opposition on some legal

17  grounds suggest they knew anything?

18              MR. MESSINEO:  Because, Your Honor, the practice -

19              THE MAGISTRATE JUDGE:  Because you -- what?

20              MR. MESSINEO:  Because the practice, as certainly

21  I've observed it, is that the federal government is

22  asserting objections and taking positions against the

23  claims, you know, which relate to them.  In these large

24  cases there are many claims, and some relate directly and

25  specifically to the FBI.  Many do not.  And frankly, that

1    was unusual.  And in retrospect, it's very unusual.  I don't

2    think that there's another instance that I can think of.

3         THE MAGISTRATE JUDGE:  I don't understand what

4    that proves.  What does that prove?

5         MR. MESSINEO:  From that I infer an awareness that

6    there is a federal interest or connection --

7         THE MAGISTRATE JUDGE:  With Lorick.

8         MR. MESSINEO:  With Lorick.

9         THE MAGISTRATE JUDGE:  Okay.  Any other evidence

10   that's suggested this gentleman, Mr. Smith, is not telling

11   you the truth?  He's explained to you exactly now, three

12   times, how this happened.  Do you still quarrel with how he

13   explained it to us?  There are a series of photographs other

14   than the photograph that Mr. Fish took, that Lorick is

15   identified in one of them by Rice, which leads Mr. Smith to

16   get the deputization documents and make them available to

17   you.  That's not true?

18        MR. MESSINEO:  What I know and what I can only

19   describe is what I've observed, and from that, what I either

20   infer or understand.  I'm not --

21        THE MAGISTRATE JUDGE:  Well, you're accusing this

22   gentleman who's sitting there of not telling me the truth.

23   Is that what this is all about?

24        MR. MESSINEO:  I'm not accusing him here --

25        THE MAGISTRATE JUDGE:  But if what he is telling

1  you is the truth, what was concealed from you?

2           MR. MESSINEO:   I'm saying that the FBI -- the

3  30(b)(6) deponent, who explicitly said there are no

4  documents, nothing, that relates to this incident, is in

5  fact the direct supervisor of the perpetrator.  I mean, this

6  isn't one of these situations where you have -- you know,

7  where it's a bureaucracy and a distance between whomever

8  was the 30(b)(6) spokesperson.  He was his direct report on

9  that very day.

10          And to not be able to recognize -- I mean, and to

11 swear over and over again that there is no connection, no

12 use of force, and no documents and no possibility either,

13 as we state in the filing, indicates -- at a minimum, Your

14 Honor, it indicates a failure to conduct a proper search.

15 At the same time, especially in connection with, as I said,

16 from the inference I draw from an objection by the federal

17 government to pursuing Lorick, is an understanding or

18 recognition that Lorick has some type of connection to a

19 federal-related claim.

20          THE MAGISTRATE JUDGE:   Do you agree, Mr. Smith?

21 Why did you oppose the production of information -- well,

22 what was the nature of the request that was made?

23          MR. SMITH:   I'm sorry?

24          THE MAGISTRATE JUDGE:   What was the nature of the

25 request that was made that you opposed?

1        MR. SMITH:  I believe that Mr. Messineo was

2    referring to the subpoena for Detective Lorick which was,

3    I think, served on WMATA.  But the letter -- my letters to

4    opposing counsel, our reply exhibits, I think they're

5    Exhibits 1 and 2, and that is -- what is stated in those

6    letters is absolutely my understanding and my representation

7    to this Court.

8        The federal government, the federal defendants

9    who are a party, were never served with a subpoena.  And

10   that doesn't comply with Rule 45, which specifically states

11   that you've got to serve all the parties if you're going to

12   try and subpoena testimony from anyone, a third party, and

13   that wasn't done here.  And therefore, I wrote letters to

14   Mr. Messineo and his co-counsel, stating that we opposed or

15   objected to the subpoena, and in fact I wasn't -- I don't

16   recall offhand right now, but you know, I'm not sure I was

17   even available for the day of the deposition, which -- so --

18       THE MAGISTRATE JUDGE:  Which was Lorick's

19   deposition.

20       MR. SMITH:  Right.

21       THE MAGISTRATE JUDGE:  Has that ever been taken,

22   by the way?

23       MR. SMITH:  No.  But, and I would add, with

24   respect to --

25       THE MAGISTRATE JUDGE:  Has it ever been taken

1   in Alliance?

2           MR. SMITH:  It, it could have, yeah.  I mean,

3   both --

4           THE MAGISTRATE JUDGE:  That's not question.  Was

5   it taken in Alliance?

6           MR. SMITH:  No.  No.

7           THE MAGISTRATE JUDGE:  Because discovery's ended

8   in Alliance?

9           MR. SMITH:  As to the federal government.

10  I believe that --

11          THE MAGISTRATE JUDGE:  Yes.

12          MR. SMITH:  -- the District and the Plaintiffs

13  are continuing to fight about some high-ranking officials.

14          The other thing I wanted to say about the subpoena

15  was that on behalf of my agency clients I would always take

16  the position that if I'm not served with a subpoena we're

17  going to object, on those procedural grounds.  It's simply

18  unfair -- that's the whole point of the rule.

19          And just given the fact -- given its importance,

20  let me just make two other points, Your Honor.  One is,

21  again, there was no reported use of force by any FBI

22  personnel or anybody reporting to the FBI.  And --

23          THE MAGISTRATE JUDGE:  Well, he says Lorick was

24  one of those people, and that Rice was his, quotes, "direct

25  supervisor."

1        MR. SMITH:  Special Agent Rice, during the

2   30(b)(6) deposition and his deposition, I think that it was

3   really both, because the Supervisor Special Agent was

4   involved in handling the protest and directing FBI

5   personnel.

6        My recollection of Rice's testimony was that he

7   did give instructions to the JTTF which included Detective

8   Lorick.  And again, we don't know if Detective Lorick's

9   involved in the Fish incident, but that -- again, this is

10   explained in our papers -- Rice's instructions to the JTTF

11   were to shadow the protest and not get involved.  So the FBI

12   would have ever expectation that those instructions would be

13   followed, and that's consistent with the fact that they

14   didn't receive any sort of use of force.

15        THE MAGISTRATE JUDGE:  When you filed your

16   opposition to the subpoena, the third-party subpoena that

17   had been served on WMATA for Lorick, is that what --

18        MR. SMITH:  That's my recollection of what

19   happened.

20        THE MAGISTRATE JUDGE:  All right.  Were you aware

21   that the deputization papers existed?

22        MR. SMITH:  I believe that Supervisory Special

23   Agent Rice brought that to my attention during his witness

24   prep, which is, I think, what Footnote 9 in our brief says.

25   And that's my understanding.

1    THE MAGISTRATE JUDGE:  And at that time had you
2  already filed your opposition to the WMATA subpoena, or had
3  you not?  Or don't you remember?

4    MR. SMITH:  My recollection is -- and, you know,
5  I would _____ go back and look at everything -- my
6  recollection is that the subpoena matter was a couple of
7  months before the deposition.  I'm not sure, standing here
8  today, exactly when I received those forms.

9    THE MAGISTRATE JUDGE:  All right.  I would
10  appreciate it if you would go back and look at those
11  documents and file a very brief declaration as to that
12  point.

13    MR. SMITH:  Okay.

14    THE MAGISTRATE JUDGE:  Thank you.  Thank you very
15  much, counsel.

16    MR. SMITH:  And just so that I'm clear, Your
17  Honor.  When the --

18    THE MAGISTRATE JUDGE:  Did you -- and _____
19  review the records, would you please state under -- in a
20  declaration format whether or not, when you opposed the
21  subpoena that had been served demanding Lorick's testimony,
22  you were aware and had seen the deputization papers that you
23  have shown me.

24    In other words, when you opposed it had you shown
25  -- had Rice said anything to you about the photographs he

1    had seen, indicating that one of them might have been Lorick

2    or was Lorick.  Do you understand?

3            MR. SMITH:  I do.

4            THE MAGISTRATE JUDGE:  Thank you.  Thank you,

5    counsel.

6            The Court will be in recess.

7            (Whereupon, the proceedings were concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

```
UNITED STATES OF AMERICA )
                         ) Civil Action No. 06-1281
DISTRICT OF COLUMBIA     )
```

I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

_____
PAUL R. CUTLER

I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

_____
BONNIE FURLONG